COMMISSION FOR POLISH RELIEF, LTD., Plaintiff, *v.* BANCA NATIONALA A ROMANIEI (NATIONAL BANK OF ROUMANIA), Defendant.

Supreme Court, Special Term, Kings County, April 2, 1941.

*Shattuck, Bangs & Davis,* for the plaintiff.

*Davis, Polk, Wardwell, Gardiner & Reed,* for the defendant.

STEINBRINK, J. The defendant National Bank of Roumania, appearing specially, asks the court to decline jurisdiction of the within action upon the ground that the forum adopted is not convenient for the trial of the prospective issues.

The complaint alleges that the defendant is a private Roumanian banking corporation; that in October, 1939, the Bank of Poland, a private Polish banking corporation, delivered to the defendant for safekeeping gold bars representing a value of $3,060,704; that in April, 1940, the Bank of Poland transferred all of its rights in and to the said gold to the Polish Food Commission, Inc., a Delaware non-profit corporation; that on May 2, 1940, the Polish Food Commission, Inc., delivered to the defendant at its principal office in Bucharest, Roumania, an order executed by the Bank of Poland directing the defendant to deliver the aforesaid gold to a representative of the Polish Food Commission, Inc.; that the defendant refused to deliver the gold and has thereby converted the same; that on December 17, 1940, the Polish Food Commission, Inc., assigned all of its rights in and to the said gold to the plaintiff herein, and that by reason thereof plaintiff demands judgment in the sum of $3,060,704, with interest from May 2, 1940.

The action was begun by attachments levied on funds and credit balances of the defendant in New York banks. The attachments were based upon the complaint and upon the affidavit of Maurice Pate, vice-president of the plaintiff corporation, which recites in detail the transaction in suit. His statement may be summarized as follows: On October 10, 1939 (shortly after the German invasion of Poland), the gold in question was deposited by the Bank of Poland for safekeeping with the defendant. Upon receipt of the gold the defendant executed a document, which reads in part as follows: " The 51 (fifty-one) cases in question have been deposited with the Treasury of the National Bank of Roumania and taken over by the latter for safe custody." On April 20, 1940, the Bank of Poland assigned its right to the gold to the Polish Food Commission, Inc., a Delaware corporation which had been organized by Mr. Herbert Hoover to administer Polish relief. The corporation directed Mr. F. Dorsey Stephens, an American citizen residing in Paris, to go to Bucharest as its representative and to there demand and take delivery of the gold. On the same day the Bank of Poland notified the defendant of the assignment and directed that the gold be turned over to Stephens. Stephens proceeded to Bucharest and demanded delivery of the gold; the demand was refused. The Bank of Poland, notified of this refusal, wrote to the defendant, reiterating its assignment and holding the defendant liable for all resulting damage. The defendant replied that it was unable to comply with the demand by reason of a ministerial decree, which blocked the gold as a guaranty for the payment of sums due by the Polish government to the Roumanian government. The Bank of Poland pointed out that the ministerial decree was handed down four days after the demand was made and that the Bank of Poland was an entity separate and apart from the Polish government. On June 11, 1940, Mr. Hoover, on behalf of the Polish Food Commission, Inc., cabled to the defendant a request for the transfer of the gold. Receipt of the cable was acknowledged with the statement that the question had been referred to the government. Two months later Mr. Hoover was advised by the defendant that the Council of Ministers had decided to hold the gold " until new orders."

In the affidavits submitted in support of the present motion the Bank of Poland's ownership of the gold and the validity of the assignments as against the defendant are questioned. The facts with respect thereto are stated on information and belief. The Roumanian charge d'affaires to our government states in his affidavit that the gold referred to in the complaint is being held by

the defendant as security under an arrangement by which it agreed to purchase bank notes issued by the Bank of Poland at an agreed rate of exchange; that the defendant has the right to retain the gold deposited against obligations owed to it by the depositor under general Roumanian law; that the assignment of the deposit was void under Roumanian law, since no authorization therefor was obtained. One of the attorneys associated with the attorneys appearing specially for the defendant herein suggests in his affidavit that the gold in question did not belong to the Bank of Poland, but that it belonged to the Polish government. The suggestion is based upon part of a memorandum of protest filed by the Polish Embassy in Bucharest at the time of the defendant's refusal to comply with the demand for the delivery of the gold to the Polish Food Commission, Inc. Attention is directed to the following paragraph contained in the memorandum: " The available Polish funds having already been committed, for the most part to the conduct of the war, the Polish Government decided to cede to the Hoover Committee, for the purpose of relief, the three thousand kilograms of gold (about $3,000,000) belonging to the Bank of Poland and being, since the autumn of 1939, on deposit with the National Bank of Roumania." Affiant says: " The implication from memorandum of protest is that the ·gold belonged to the Polish State and not to ·the Bank of Poland," and this despite the clear statement in the memorandum that the gold belongs to the Bank of Poland. The affidavit recites further, on information and belief, that the plaintiff corporation was organized for the sole purpose of taking legal action in New York on the gold deposited with the defendant, and neither solicits funds from the public nor intends to do so.

The answering affidavits deny that the gold was deposited as security, deny that there is any right in the defendant to retain the gold under Roumanian law or that the assignment was invalid under the said law, and reject the implication sought to be drawn from the memorandum of protest. In view of what is said below it will not be necessary to resolve the conflicting claims.

A domestic corporation may maintain an action against a foreign corporation for any cause of action (Gen. Corp. Law, § 224), and when such action is begun and jurisdiction properly obtained its retention is compulsory (*Gregonis* v. *P. & R. Coal & Iron Co* , 235 N. Y. 152, 156), even though the action is brought on a claim assigned by a non-resident. (*McCauley* v. *Georgia R. R. Bank,* 239 N. Y. 514.) The defendant's attorneys recognize the force of this rule, but assert that jurisdiction should be declined in

this case on the ground that the jurisdictional barriers are sought to be evaded by subterfuge.

The court may properly decline jurisdiction obtained by fraud or collusion. (*Hoes* v *N Y., N. H. & H. R. R. Co.*, 173 N. Y. 435; *Pietraroia* v. *N. J. & H. R. R. & F Co.*, 197 id. 434.) But what the defendant here claims falls far short of fraud or collusion. The defendant claims that the real disputants in this action are the Bank of Poland and the defendant and that the plaintiff was incorporated in this State for the sole purpose of bringing the action on the claim assigned to it by the Delaware corporation in violation of section 275 of the Penal Law. The documentary proof before the court discloses that the assignment from the Bank of Poland to the Delaware corporation was absolute and unconditional and that the assignment to the plaintiff was of like tenor. The statement in the moving papers that the Polish government is under obligation to account to the Bank of Poland for whatever recovery the plaintiff may make in this action rests wholly on surmise and conjecture. But quite apart from this there is completely lacking any basis for a finding that the plaintiff is suing on behalf and for the benefit of a foreign corporation. On the contrary, the only finding possible is that the plaintiff is suing on its own behalf in furtherance of its own corporate purposes, namely, Polish relief.

What has been said proceeds upon the assumption that the interest of a resident plaintiff in the action being maintained and the motives which inspire its maintenance are relevant on a motion of this type. However, an examination of the opinion of the court at Special Term in the *McCauley* case (122 Misc. 632) would seem to indicate that such considerations are not properly the subject of inquiry. In that case the assignment to the resident plaintiff was colorable and given for the sole purpose of enabling him to bring an action the proceeds of which were to be turned over to his assignor, a foreign corporation The court, citing the *Gregonis* case, held itself without power to decline jurisdiction.

There remains for consideration the contention that the court, in its discretion, should decline jurisdiction upon the ground that the assignment herein was taken by plaintiff in violation of section 275 of the Penal Law. So far as pertinent the section reads as follows: " § 275. Purchase of claims by corporations or collection agencies. No person or copartnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or

taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon  *  *  *."

The clause imposing the prohibition on corporations and associations was taken from section 280 which prohibits such entities from practicing law.

The assertion that the assignment was taken by the plaintiff for the sole purpose of bringing action thereon is denied by the plaintiff, whose vice-president recites the facts which led to the plaintiff's incorporation and acceptance of the assignment. It appears that the plaintiff's assignor, the Delaware corporation, was organized by Mr. Hoover in April, 1940, for the purpose of carrying on a large-scale relief operation in Poland, to be financed largely by subsidies from the English, Polish and French governments. With the conquest of France and the tightening of the British blockade against the importation of food to the continent, the project planned by Mr. Hoover failed. The plaintiff was thereupon organized. Each of its directors has from time to time engaged in relief operations in Europe. Plaintiff's stated corporate purpose is to carry on relief in Poland and among its refugees. It accepted the assignment and agreed unconditionally to apply the gold to that purpose.

A holding that the humanitarian and benevolent purposes which led to the plaintiff's incorporation and acceptance of the assignment constitutes a violation of section 275 of the Penal Law would be difficult if not impossible to defend  No extended discussion relating to the statutory purpose is necessary, for even assuming the applicability of the statute to a transaction of this sort, a question of fact is raised as to whether the assignment was taken for the *sole* purpose of bringing the action thereon. Finally, a finding that the statute has been violated would not vest the court with power to decline jurisdiction properly obtained by a resident of this State. (Cf. *McCauley* v. *Georgia R. R. Bank, supra.*)

The motion is accordingly denied.