COMMISSION FOR POLISH RELIEF, LTD., Respondent, *v.* BANCA NATIONALA A ROMANIEI (NATIONAL BANK OF ROUMANIA), Appellant.*

DANIEL E. FINN, JR., as Sheriff of the County of New York, Respondent.

Second Department, November 3, 1941.

*Affg. 176 Misc. 1070. See, also, Id. 1064.

*John W. Davis* [*William C. Cannon* and *Harold W. Bissell* with him on the brief], for the appellant.

*Edwin P. Shattuck* [*Sydney Waldecker* and *George B. Francis* with him on the brief], for the plaintiff, respondent.

*John V. Campbell,* for the respondent Sheriff of the County of New York.

TAYLOR, J. This action was brought to recover $3,060,704, for alleged conversion by defendant of gold bars of that value. The facts are undisputed. The German army invaded Poland in September, 1939. The Bank of Poland, at Warsaw, sought to transfer its gold reserve to a place of safety, and caused fifty-one cases of those bars to be delivered to the defendant, at Bucharest, for safe-keeping. The defendant received and receipted for the gold. While it was thus held, the Bank of Poland duly transferred its right, title and interest therein to the Polish Food Commission, Inc., duly organized under the laws of the State of Delaware for the purpose of carrying on relief among the Polish population and refugees, which corporation sent its agents to Bucharest to take possession of the gold. The defendant refused to deliver it, stating, *inter alia,* that the German authorities had made claim to it. Thereafter, the claim to the gold was duly assigned to the plaintiff, a domestic corporation, also organized to carry on Polish relief. This action was commenced by the issuance of a summons and a warrant of attachment, dated, respectively, December 18 and December 19, 1940. The warrant was duly served on a number of banks in the city of New York; and a large amount of credits and gold belonging to defendant was thus sought to be attached. In February, 1941, defendant made a motion that the Supreme Court of New York decline jurisdiction on the ground of "*forum non conveniens.*" This motion was denied on April 2, 1941. (176 Misc. 1064.) The parties at that time, by stipulation, reduced the amount under attachment to $4,000,000, held by three New York banks, as follows: Chase National Bank, $2,220,955.30; Irving Trust Company, $673,802.89; National City Bank, $1,105,241.81. On October 10, 1940, before the warrant was issued, payments from bank accounts of Rumanian nationals, therefore including defendant, had been prohibited by Executive Order No. 8565 (Oct. 10, 1940) of the President of the United States, amending Executive Order No. 8389 (April 10, 1940), as amended, unless such payments thereafter should be authorized by Treasury regulations or licenses.

In common parlance, this is a " freezing " order, authorized by section 5(b) of the Trading with the Enemy Act, passed October 6, 1917, as amended May 7, 1940. (See U. S. Code, tit. 50, appendix, § 5[b].) Such Executive Order (No. 8785, June 14, 1941, amending No. 8389), in pertinent part reads:

" Section 1. All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury by means of regulations, rulings, instructions, licenses, or otherwise, if (i) such transactions are by, or on behalf of, or pursuant to the direction of any foreign country designated in this Order, or any national thereof, or (ii) such transactions involve property in which any foreign country designated in this Order, or any national thereof, has at any time on or since the effective date of this Order had any interest of any nature whatsoever, direct or indirect:

" A. All transfers of credit between any banking institutions within the United States; and all transfers of credit between any banking institution within the United States and any banking institution outside the United States (including any principal, agent, home office, branch, or correspondent outside the United States, of a banking institution within the United States);

" B. All payments by or to any banking institution within the United States;

" C. All transactions in foreign exchange by any person within the United States;

" D. The export or withdrawal from the United States, or the earmarking of gold or silver coin or bullion or currency by any person within the United States;

" E. All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property by any person within the United States; and

" F. Any transaction for the purpose or which has the effect of evading or avoiding the foregoing prohibitions. * * *

" Section 3. The term ' foreign country designated in this Order ' means a foreign country included in the following schedule, and the term ' effective date of this Order ' means with respect to any such foreign country, or any national thereof, the date specified in the following schedule: * * * (e) October 9, 1940 — Rumania * * *."

Concededly, the wording relating to the prohibited transactions, " A " to " F," inclusive, has remained unchanged since a date prior to the attempted levies. The Secretary of the Treasury has issued no authorization in the form of license, or otherwise, to the sheriff of the county of New York, the plaintiff, or the banks, with respect to the bank deposits, *supra*, claimed by plaintiff to be the subject

of valid attachment herein. Certain relevant applications for licenses have been denied, in effect without prejudice. These were made by the banks to the Secretary of the Treasury for licenses to transfer the amounts deposited, respectively, to the name of the sheriff for the account of this action. The ninety-day period within which the sheriff was required to bring an action to collect the amounts (Civ. Prac. Act, § 922, subd. 1) has been extended by various orders (Id.), until December 30, 1941.

No question is here raised as to the validity of the attachment, the alleged levies thereunder or the service of process made upon the defendant, except the fundamental one raised by defendant, appearing specially, that because of the effect of the Executive Order (1) the levies failed to subject any property of the defendant to the jurisdiction of the Supreme Court, and (2) that such court has no jurisdiction *in rem*. The appellant contends that its bank deposits were rendered unattachable by the Executive Order, which order " blocked " or " froze " its accounts, and that in consequence the court has no jurisdiction of the cause, there having been no personal service of summons upon defendant. The answer to this fundamental question will be dispositive of the appeal.

Upon the undisputed facts, we are of opinion and decide (1) that the Supreme Court acquired and has jurisdiction *in rem;* (2) that the Executive Order, even in the absence of a license thereunder, did not prevent a valid levy under the attachment upon each of defendant's bank accounts; (3) that by reason of such levy, the court acquired dominion over the rights and interest of the defendant in such account; (4) that a valid levy upon each bank account has been made, pursuant to the provisions of the Civil Practice Act, and still exists; and (5) that such bank accounts constitute an attachable *res*, not affected by the Executive Order, which merely provides a regulatory plan and operates exclusively *in personam* upon the banks, and has no further or other legal effect.

Manifestly, the Executive Order has no expropriating effect. Thereunder the funds of the defendant have not been seized. The order merely restrains their payment or transfer by the banks. It does not prohibit defendant's institution of suit against a bank holding defendant's funds. It does not prevent the assignment of the defendant's claim against such a bank in a way conveying effectually to the assignee the title to the claim. The prohibition, as indicated, extends only to the payment or transfer of the funds. Clearly, the sole purpose of the order was to prevent the funds of certain foreign nations, including Rumania, and their nationals, from falling into the hands of the aggressor Axis powers. To

accomplish this proper result and for no other or different purpose, the banks in this country are prohibited from paying out or transferring credits due to such foreign nations or their nationals, without first obtaining the required license from the Treasury Department. It is more than clear that neither the government nor its Executive intended to do away with a creditor's right to attach " frozen " or " blocked " funds, or with the debtor's right to assign to another his claim to such funds.

Upon accepted principles, bank accounts, such as are here involved, are debts due to the appellant which furnish an adequate basis of jurisdiction if seized by legal process. In New York this process contemplates service of a certified copy of the warrant of attachment, which service is " deemed a levy upon, and a seizure of all the rights of the defendant in or to the said debt." (Civ. Prac. Act, § 916, subd. 3; *Erskine* v. *Nemours Trading Corp.*, 239 N. Y. 32.) Such a debt is incapable of manual seizure, and service of the warrant constitutes a seizure thereof under the doctrine of " constructive seizure." (*Pennoyer* v. *Neff*, 95 U. S. 714; *Plimpton* v. *Bigelow*, 93 N. Y. 592, 597; *Harris* v. *Balk*, 198 U. S. 215, 222, 223; *Security Bank* v. *California*, 263 id. 282, 286; *Zuhlke* v. *Prudential Life Ins. Co.*, 244 App. Div. 549, 551.)

Adjudicated cases in this State are analogous, and proceed upon the principle underlying our ruling above indicated. (Cf. *Warner* v. *Fourth Nat. Bank*, 115 N. Y. 251, 257, 258; *Dunlop* v. *Patterson Fire Ins. Co.*, 74 id. 145.)

The order appealed from should be affirmed, with ten dollars costs and disbursements to each respondent. Defendant's time to answer is extended until twenty days from the entry of the order thereon.

LAZANSKY, P. J., JOHNSTON, ADEL and CLOSE, JJ., concur.

Order denying defendant's motion to vacate the warrant of attachment, the levies made thereunder, the order for the service of the summons by publication and the service made pursuant thereto, affirmed, with ten dollars costs and disbursements to each respondent. Defendant's time to answer is extended until twenty days from the entry of the order thereon.