COMMISSION FOR POLISH RELIEF, LTD., Respondent, v. BANCA NATIONALA A RUMANIEI, Appellant. JOHN J. MCCLOSKEY, JR., as Sheriff of the City of New York, Respondent.

Argued March 18, 1942; decided July 29, 1942.

*John W. Davis, William C. Cannon, Harold W. Bissell* and *Frederick G. Watson,* appearing specially, for appellant. Under the executive order, in the absence of a license, the attempted levy upon the defendant's deposit account did not and could not give the court any dispositive dominion over any right or interest of the defendant therein. (*Commonwealth* v. *Imperial Woolen Co.,* 290 Penn. St. 526; *Schalucky* v. *Field,* 124 Ill. 617.) Inasmuch as the attempted levy upon the defendant's deposit account failed to give the court any dispositive dominion over any right or interest of the defendant therein, no valid levy has been made and no jurisdiction has been acquired. (*Fredrick* v. *Chicago Bearing Metal Co.,* 221 App. Div. 588; *Sturcke* v. *Link,* 26 N. Y. Supp. [2d] 748; *Pennoyer* v. *Neff,* 95 U. S. 714; *Harris* v. *Balk,* 198 U. S. 215; *Security Sav. Bank* v. *California,* 263 U. S. 282; *Zuhlke* v. *Prudential Life Ins. Co.,* 244 App. Div. 549; *Bollack* v. *Societe Generale,* 177

Misc. Rep. 136; *Penoyar* v. *Kelsey*, 150 N. Y. 77; *Sheehy* v. *Madison Square Garden Corp.*, 266 N. Y. 44; *Columbia Bank* v. *Equitable Life Assur. Soc.*, 79 App. Div. 601; *Reifman* v. *Warfield Co.*, 170 Misc. Rep. 8; *McFadden* v. *Innes*, 60 Misc. Rep. 543; 130 App. Div. 880; *Dunlop* v. *Patterson Fire Ins. Co.*, 74 N. Y. 145; *Judis* v. *Martin*, 218 App. Div. 402.)

*Edwin P. Shattuck, Sydney Waldecker* and *George B. Francis* for plaintiff, respondent. Appellant's deposit accounts are attachable *res.* The executive order does not affect this status. The executive order merely provides a regulatory plan and operates exclusively *in personam* upon the banks. (*United States* v. *Campbell*, 5 Fed. Supp. 156; *Hyatt* v. *Taylor*, 42 N. Y. 258; *Furey* v. *Town of Gravesend*, 104 N. Y. 405; *McKuskie* v. *Hendrickson*, 128 N. Y. 555; *United States* v. *Chase*, 135 U. S. 255; *Fasulo* v. *United States*, 272 U. S. 620; *United States* v. *Driscoll*, 9 Fed. Supp. 454; *City of East Cleveland* v. *Fidelity & Deposit Co.*, 5 Fed. Supp. 212.) The Supreme Court has adequate jurisdiction *in rem* under the attachments, and the levies have been executed in accordance with the provisions of the Civil Practice Act. (*Warner* v. *Fourth Nat. Bank*, 115 N. Y. 251; *Simpson* v. *Jersey City Contracting Co.*, 165 N. Y. 193; *McNeeley* v. *Welz*, 166 N. Y. 124; *Higgins* v. *McConnell*, 130 N. Y. 482; *General Motors Corp.* v. *Ver Linden*, 199 App. Div. 375; *Brown* v. *Morgan & Co.*, 177 Misc. Rep. 763; *Birge-Forbes Co.* v. *Hege*, 251 U. S. 317; *Raftes* v. *Argyropulo*, 123 Misc. Rep. 738; *Castriotis* v. *Guaranty Trust Co.*, 229 N. Y. 74; *Ajax Craftsmen, Inc.*, v. *Whinston*, 269 N. Y. 7; *Coddington* v. *Gilbert*, 5 Duer, 72; *Clinton Trust* v. *Compania*, 172 Misc. Rep. 148.)

*John V. Campbell* and *Sidney Posner* for John J. McCloskey, Jr., as Sheriff of the city of New York, respondent.

*Francis M. Shea, Assistant Attorney-General, Mathias F. Correa, United States Attorney, Sidney J. Kaplan, Special Assistant to Attorney-General (Edward H. Foley, Jr., Bernard Bernstein, Ansel F. Luxford* and *Josiah E. Du Bois, Jr.,* of counsel), for United States of America, *amicus curiæ.* Title to the funds of the National Bank of Rumania held in blocked accounts in the State of New York cannot be transferred without the approval of the Secretary of the Treasury under the executive order. (*Grogan* v. *Walker &*

*Sons,* 259 U. S. 80; *Sturm* v. *Truby,* 245 App. Div. 357; *Barton* v. *Port Jackson Road Co.,* 17 Barb. 397; *United States* v. *Dickerson,* 310 U. S. 554; *United States* v. *American Trucking Associations, Inc.,* 310 U. S. 534; *Littlefield* v. *Clary,* 66 Ga. 322; *Bryan* v. *Menefee* 21 Okla. 1; *Bullen* v. *Wisconsin,* 240 U. S. 625; *Norwegian Nitrogen Products Co.* v. *United States,* 288 U. S. 294; *Skeen* v. *Lynch,* 48 Fed. Rep. [2d] 1044.) Unauthorized transfers of property in blocked accounts are invalid under General Ruling No. 12 made under the executive order. (*British-American Tobacco Corp.* v. *Federal Reserve Bank,* 104 Fed. Rep. [2d] 652; *Koninklijke Lederfabriek Oisterwijk N. V.* v. *Chase Nat. Bank,* 177 Misc. Rep. 186; *Amstelbank N. V.* v. *Guaranty Trust Co.,* 177 Misc. Rep. 548; *The Kensington,* 183 U. S. 263; *Norman* v. *Baltimore & Ohio R. R. Co.,* 294 U. S. 240; *Blount* v. *Windley,* 95 U. S. 173; *Funkhouser* v. *Preston Co.,* 290 U. S. 163.) There has been a valid attachment authorized by the Secretary of the Treasury pursuant to the executive order. *Castriotis* v. *Guaranty Trust Co.,* 229 N. Y. 74; *Hanna* v. *Stedman,* 230 N. Y. 326; *National Park Bank* v. *Billings,* 144 App. Div. 536; 203 N. Y. 556; *Higgins* v. *McConnell,* 130 N. Y. 482; *Hamilton* v. *Drogo,* 241 N. Y. 401; *McNeeley* v. *Welz,* 166 N. Y. 124.)

LOUGHRAN, J. Commission for Polish Relief, Ltd., a domestic membership corporation, is the plaintiff. The defendant is Banca Nationala A Rumaniei, a foreign private banking corporation existing under the laws of the Kingdom of Rumania.

The material allegations of the unchallenged complaint are these: In October, 1939, Bank Poliski — a foreign private banking corporation existing under the laws of the Republic of Poland — delivered to the defendant at its principal office at Bucharest, Rumania, gold of the value of $3,060,704 which the defendant there received for safekeeping. In April, 1940, Bank Poliski transferred all its right to this gold to Polish Food Commission, Inc., a Delaware non-profit corporation. In May, 1940, Polish Food Commission, Inc., made demand for this gold upon the defendant and delivery thereof was refused. In December, 1940, the cause of action for such tortious conversion of this gold was assigned by Polish Food Commission, Inc., to the plaintiff.

This action was initiated in December, 1940, by issuance of the summons and of a warrant of attachment that had been granted to the plaintiff. On December 19, 1940, the warrant was levied upon $4,000,000 of credits in deposit accounts maintained by the defendant at domestic banking houses in the city of New York. On January 14, 1941, the plaintiff obtained an order under which the summons was served by publication.

At that stage, the defendant moved for an order vacating the warrant of attachment, the levies thereof and the constructive service of process. This appearance of the defendant was made specially for the one purpose of invoking the following provisions of an Executive Order of the President of the United States:

· " *Section 1*. All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury by means of regulations, rulings, instructions, licenses, or otherwise, if  *  *  * (ii) such transactions involve property in which any foreign country designated in this Order, or any national thereof, has at any time on or since the effective date of this Order had any interest of any nature whatsoever, direct or indirect:

" A. All transfers of credit between any banking institution within the United States; and all transfers of credit between any banking institution within the United States and any banking institution outside the United States (including any principal, agent, home office, branch, or correspondent outside the United States, of a banking institution within the United States);

" B. All payments by or to any banking institution within the United States;  *  *  *

" E. All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property by any person within the United States; and

" F. Any transaction for the purpose or which has the effect of evading or avoiding the foregoing prohibitions.  *  *  *

" *Section 3*. The term ' foreign country designated in this Order ' means a foreign country included in the following schedule, and the term ' effective date of this Order ' means with respect to any such foreign country, or any national thereof, the date specified in the following schedule:  *  *  * (f) October 9, 1940 — Rumania  *  *  * " (Executive Order No. 8389 of 1940 as amended by No. 8565 of 1940).

As the defendant sees it, the Executive Order so far immobilized its deposit accounts in the New York banks as to render them wholly unattachable in the absence of a lifting license of the Secretary of the Treasury. In that view the court had no jurisdiction of the cause of action — for the plaintiff disclaimed any such allowance of liberty to proceed *in rem*, and there was lack also of personal service of the summons. This fundamental issue has been ruled in favor of the plaintiff in the courts below and is now before us on this appeal taken by the defendant pursuant to leave of the Appellate Division. The controversy has been presented to us in two parts.

(1) The first contest is upon the question of the aim and effect of the Executive Order. The Special Term said: " There has been no seizure of the funds, but merely a restraint against their transfer or payment with the view of protecting the dominated nation or its nationals and American creditors." (176 Misc. Rep. 1070.) So, the Appellate Division said: " Clearly, the sole purpose of the Order was to prevent the funds of certain foreign nations, including Rumania, and their nationals, from falling into the hands of the aggressor Axis powers." (262 App. Div. 543, 546.) As read by the Special Term the Executive Order leaves open the way to an " assignment of the defendant's claims against the banks that would carry the title." (p. 1071.) The Appellate Division likewise conceived of the Order as a command which " operates exclusively *in personam* upon the banks." We hold a different opinion in respect of this question.

The Executive Order is a check upon trading with the enemy. Its prime purpose is to stop such uses of foreign property rights as might imperil national defense. The words of the Chief Executive of the nation must be taken to have deprived the defendant of power to transfer any interest in these blocked accounts except through the medium of assignment subject to a releasing of the credit by the Secretary of the Treasury.

(2) To the defendant this means that its claims against the New York banks were here non-leviable things. The point is put in this way: " It may be conceded that a ' seizure subject to license ' would not violate the Executive Order. The difficulty is that a ' seizure subject to license ' is no seizure whatever."

In support of this contention, the defendant invokes *Sheehy* v. *Madison Square Garden Corp.* (266 N. Y. 44). We there said: " It is well settled that an indebtedness is not attachable unless it is absolutely payable at present or in the future, and not dependable upon any contingency " (p. 47). In the *Sheehy* case, however, the asserted *res* was nothing but a right to earn money in the future. Attachment of a debt is obviously an impossibility when it is thus uncertain whether the garnishee will ever become indebted to the defendant in the action. (Cf. Civ. Prac. Act, § 916, subd. 3.) We have a manifestly different case here. Each of the New York banks owed to this defendant a debt which (as between the parties thereto) was payable on demand at the time of the levy. These actual liabilities were not transmuted into contingent obligations merely because the Executive Order had adventitiously put a stay upon them. (See Drake on Attachment [4th ed.], § 552.)

The Executive Order did not forbid attachment of the conceded interest of the defendant in the credits upon which the levies were made. For all we know, payment of the blocked accounts to the credit of this action can be permitted consistently with the purpose of the Order. We are not to presuppose that this will inevitably be refused in the event of a judgment for the plaintiff. (Cf. *Simpson* v. *Jersey City Contracting Co.*, 165 N. Y. 193, 200.) The lien of an attachment is always hypothetical in some degree. A " seizure subject to license " was, we think, sufficient for the purpose of jurisdiction *in rem* over the deposits in question. (See *Higgins* v. *McConnell*, 130 N. Y. 482; *McNeeley* v. *Welz*, 166 N. Y. 124, 128; *Clements* v. *Doblin*, 209 App. Div. 208; 239 N. Y. 526; *Davis* v. *C. C. C. & St. L. Ry. Co.*, 217 U. S. 157, 174–179; *Feuchtwanger* v. *Central Hanover Bank & Trust Co.*, 288 N. Y. 342, decided herewith.)

The dissenting opinion calls upon us to say a word more. As *amicus curiæ*, the government of the United States informs us of its decision that the levies of this attachment do not offend any national policy implied by the Executive Order. We do not presume to contradict this executive determination. (See *United States* v. *Pink*, 315 U. S. 203.)

The order should be affirmed, with costs. The question certified should be answered in the affirmative.

FINCH, J. (dissenting). The main issue is as to the purpose and effect of the Executive Order. The words of the Executive Order and, read as a whole, its plain purpose are to give to the Secretary of the Treasury such complete control over these frozen bank deposits as will enable him to prevent the acquisition or transfer of any rights whatsoever therein.

The Executive Order is designed for the purpose of affording the Secretary the means of preventing nations with which we are at war from utilizing in any manner such deposits. The entrance of the United States into the war, and more especially the declaration of war between the United States and Rumania, emphasizes this primary purpose. These freezing orders are used to give complete wartime control, and to effect a complete prohibition against trading by or with the enemy. To insure the effectiveness of such control, the Secretary of the Treasury is given the power to grant or refuse licenses. There is nothing to prevent the Secretary of the Treasury from consenting to any transfer of interest. In the absence, however, of a precedent consent by the Secretary of the Treasury, no interest whatsoever can be lawfully acquired in this property in view of the terms of the Executive Order. Otherwise not only the wording but the purpose of the freezing order is violated.

If I understand the difference of opinion in this court, it is that those opposed to the above view take the position that a transfer by attachment may be made conditioned upon a subsequent releasing of the deposits by the Secretary of the Treasury. Such a view affords a medium of trading in these blocked accounts. It is the view here taken that any construction of the Executive Order which would permit trading in these blocked deposits to any extent would immediately render them available for purposes inimical to the national interest. If no interest at all is acquired then the attachment must fail. In so far as an interest is acquirable, to that extent trading with the enemy is permitted and perhaps under certain circumstances protected by constitutional requirements. No transfer of title in the absence of a license is permitted by the wording of the Executive Order, whether the transfer be by means of assignment or attachment. The purpose of the Executive Order is not to freeze the deposits and permit a change of owner-

ship subject to a license, but the purpose is to freeze deposits as now owned and still to be owned by blocked nationals. The important point is that the Executive Order freezes this deposit under the ownership of the National Bank of Rumania as a blocked national, and that this deposit cannot be divorced from that ownership without a prior release from the Secretary of the Treasury.

The States of this Union do not share in the power over external affairs. When the United States, acting within its sphere of dealing with foreign nations, seeks enforcement of its policy by the courts, the policies of the States become irrelevant to judicial inquiry (*United States* v. *Pink*, 315 U. S. 203).

In addition, the attempted levy by attachment in the absence of a license obtained from the Secretary of the Treasury, failed to give to the court any dispositive dominion over any interest of the defendant in the fund, and hence it follows that no valid levy has been made and no jurisdiction acquired (*Pennoyer* v. *Neff*, 95 U. S. 714, 727).

The very nature of an attachment is to hold the property attached until an execution may be available following the judgment rendered upon the trial. No effective levy can be made where the right which is sought to be attached is not a right *in præsenti* or *in futuro*, but is merely a right based upon a contingency which may or may not happen in the future.

An authority in point is *Sheehy* v. *Madison Square Garden Corporation* (266 N. Y. 44), where payments were attempted to be attached under a contract contingent upon performance of service. Since the party to the contract who was to perform had rendered no service, he had no enforceable rights either *in præsenti* or *in futuro*, and hence no attachment was possible.

In *Herrmann & Grace* v. *City of New York* (130 App. Div. 531, 535, affd. on opinion below, 199 N. Y. 600), where nothing was absolutely payable either in the present or in the future, it was held that no attachment could issue. So, in the case at bar, if the Executive Order has been correctly above interpreted, nothing is payable in the present or in the future except upon a contingency which may never happen. While the foregoing authorities show no dispositive dominion possible over the *res* because no *res* ever came into being, and in the case at bar dispositive dominion is lack-

ing because alienability is based upon a contingency which may never happen, yet the principle upon which attachment may not issue is the same in both instances. There is nothing in the statute of New York authorizing attachment and no authority which specifies any such possibilities or hopes as the subject of attachment. What the plaintiff is seeking here is a *res* sufficiently illusory not to fall within the all-inclusive prohibition of the Executive Order and at the same time to be sufficiently substantial to afford a basis for jurisdiction. In my opinion such inconsistency seeks the impossible. Hence within the authorities no attachment is possible.

In the cases relied upon to sustain the attachment, the levy was upon property, realization upon which was not dependent upon any contingencies which might prevent the property from ever being alienable.

In so far as the brief submitted by the United States may be read as consenting to a transfer, it was written before war was declared between the United States and Rumania.

It follows that the order appealed from should be reversed, the levies and the order for service by publication and the service made pursuant thereto, vacated, and the certified question answered in the negative, with one bill of costs to the respondents.

Lehman, Ch. J., Lewis and Desmond, JJ., concur with Loughran, J.; Finch, J., dissents in opinion in which Rippey and Conway, JJ., concur.

Order affirmed, etc.