**REPUBLIC OF CHINA et al.**

v.

**NATIONAL CITY BANK OF NEW YORK.**

**No. 44, Docket 22773.**

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1953.

Decided Dec. 8, 1953.

See, also, 2 Cir., 194 F.2d 170.

Kirlin, Campbell & Keating, New York City (Cletus Keating, New York City, Robert E. Kline, Jr., Washington, D. C., and Louis J. Gusmano, New York City, of counsel), for Republic of China.

Shearman & Sterling & Wright, New York City (Chauncey B. Garver and W. Harvey Reeves, New York City, of counsel), for National City Bank of New York.

Before SWAN, FRANK and MEDINA, Circuit Judges.

FRANK, Circuit Judge.

The plaintiffs, the Republic of China (with its National Government now located in Formosa) and others, brought this suit under section 25(b) of the Federal Reserve Act, 12 U.S.C.A. § 632, to recover $200,000 which, according to the complaint, was deposited with the defendant bank and which defendant refuses to pay. The complaint alleges that the deposit was made by plaintiff, the Shanghai-Nanking Railway Administration, an agency of the Republic of China, and that the Secretary of State of the United States, pursuant to section 25(b) has certified to defendant that the deposit belongs to the Republic of China. Defendant's amended answer includes not only denials and affirmative defenses but also two counterclaims which Judge Kaufman in his opinion— 108 F.Supp. 766—summarized as follows: "The first counterclaim alleges that on or about August 9, 1920, defendant participated in a loan made by J. P. Morgan & Co. to the Pacific Development Co. in the face amount of $5,000,000, said loan being secured by a $5,500,000 Chinese Government Treasury Note, being the note of the plaintiff herein, The Republic of China. Said loan was not paid on its maturity date by Pacific Development Company and subsequently Pacific Development Company was liquidated. In the course of said liquidation, J. P. Morgan & Co. offered the collateral for sale at public auction and purchased the collateral on behalf of the participants in the loan to the Pacific Development Company. The Chinese Government Treasury Note is still held by J. P. Morgan & Co. and is now past due, and by virtue thereof there is said to be owing to the defendant the sum of $317,720.93 plus interest of $590,386.53. For a second counterclaim against plaintiff, The Republic of China, the defendant alleges that between April and August 1947 defendant began the purchase of Chinese Government 36th Year Short Term Treasury Notes of The Republic of China. On these notes, the plaintiff, The Republic of China, is said to be indebted to the defendant in the sum of $391,033.60 principal together with interest thereon in the sum of $335,290.94. Defendant demands judgment against the plaintiffs dismissing the complaint with costs, and against the plaintiff, The Republic of China, for the sum of $1,634,432."

Each counterclaim contained this allegation: "The plaintiff, The Republic

of China, is, and at all times hereinafter mentioned was, a sovereign government recognized as such by the duly appointed Executive Department of the United States."

The defendant's amended answer also shows the following: Regulations issued by the Republic of China in connection with the 36th Year Short-Term Treasury Notes provided that the "Fiscal Agents" for the payment of those Notes were the Central Bank of China, and its "appointed banks"; a branch of defendant in Shanghai, China, was one of these "appointed banks"; it continued to be such when in 1948, because of a default, the principal of those Notes became payable, and thereafter until the seizure of Shanghai by the People's Government of China in May 1949.

On the motion of plaintiff, the Republic of China, the counterclaims were dismissed by an order entered January 8, 1953. Some thirteen days later, defendant moved for leave to submit a further amendment of its answer to include amendments of the counterclaims designating each as a "set off" and specifically alleging that defendant's Shanghai branch was one of the banks at which the 36th Year Short-Term Notes were payable. An affidavit accompanying this motion stated that the Treasury Note described in the first counterclaim was payable at the Chase National Bank, New York. This motion was denied by an order entered February 27, 1953. This appeal is from the orders of January 8 and February 27, 1953. For the purposes of this appeal, we shall consider the counterclaims as if they had been further amended in the manner proposed by defendant.

■ 1. As the defendant in each of its counterclaims, specifically alleged that the Republic of China was a sovereign government recognized as such by our government, there was no need, in passing on the motion to dismiss, to have a trial to determine that fact.[1] We recently stated, in Republic of China v. American Express Co., 2 Cir., 195 F. 2d 230, 233, that a "friendly, foreign sovereign, recognized by the United States, cannot be sued in the courts of this country without its consent." We went on to say, however, that, when a sovereign sues in our courts to enforce a claim, "it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. * * * Accordingly, we have held that a sovereign who sues in our courts so submits itself to the jurisdiction it has invoked that defenses by way of set-off and of counterclaim are available against it. * * * But the waiver of immunity[2] does not extend beyond, at most, counterclaims which are based upon the subject matter of the suit." We think the trial judge correctly held that the counterclaims here were not based on the subject matter of the suit. We reach the same result if we regard the counterclaims as but set-offs.[3] For the assertion against a sovereign government of a counterclaim or set-off, unrelated to the claim asserted by the sovereign in its suit, is the equivalent of an independent suit against that sovereign brought without its consent.[4] Wherefore we

1. As Judge Kaufman said: "While this point might be well taken if it were directed to a motion to strike the affirmative defenses it is wholly inappropriate here for the simple reason that the counterclaims in question are pleaded, not against the Shanghai-Nanking Railway Administration but against The Republic of China itself."

2. We agree with Judge Kaufman that the "agreement" by "implication" and the "waiver" are fictions used in the interest of achieving justice.

3. See United States v. Shaw, 309 U.S. 495, 503–504, 60 S.Ct. 659, 84 L.Ed. 888, quoting with approval from Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190, in discussing The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313, decided the same day as the Smelting Works case.

4. See In re Monongahela Rye Liquors, 3 Cir., 141 F.2d 864, 869. Our disagree-

think the district court's orders were correct.

Defendant has referred us to a letter dated May 19, 1952, from Mr. Tate, Acting Legal Adviser to the State Department, to the Attorney General,[5] calling attention to a so-called "trend" or "shift of policy" on the part of our State Department tending to restrict the sovereign immunity of foreign governments to "governmental" or "public" acts and to exclude "private acts" or "commercial activities." Defendant, as we understand it, does not argue that this new trend, if adopted by our courts, would here serve to deprive plaintiff of its sovereign immunity. Defendant's position seems to be that the alleged new trend indicated in this letter should be further extended judicially so as to validate the counterclaims in the instant case. Assuming, *arguendo*, that this letter could and should affect judicial decisions, we see nothing in it to justify the suggested extension. We have no high regard for the idea that, without its consent, a government may not be sued for acts which, if done by a private person, would be actionable wrongs.[6] But we feel that we must leave to Congress or the Supreme Court any marked diminution of that hoary doctrine (although, in the belief of many persons, it is basically immoral).

2. Defendant also relies on Section 147 of the New York Negotiable Instrument Law, McK.Consol.Laws, which provides: "Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon." We think it plain that this provision of the New York statute has no application to the 36th Year Short-Term Treasury Notes, covered by the second counterclaim, since they are payable in China.

The Note referred to in the first counterclaim is not payable at the defendant bank but at another New York bank. We think that fact prevents Section 147 from operating to give rise to a waiver by The Republic of China of its immunity with respect to the first counterclaim. See United States v. New York Trust Co., D.C., 75 F.Supp. 583, 587; United States v. National City Bank of New York, D.C., 90 F.Supp. 448, 454. We think it irrelevant for this purpose that the defendant has a part interest in any proceeds of the Note.

3. Defendant also contends that it had a so-called "bankers' lien," or right of set-off, based on the Treasury Notes named in the second counterclaim. We think this contention untenable. For the deposit, the subject of this suit, was made with defendant in New York, and continued thereafter to be owing by it in New York, whereas those Treasury Notes, purchased by defendant's Shanghai branch, were there payable. The creation of such a branch bank finds its authorization in Section 25 of the Federal Reserve Act, 12 U.S.C.A. §§ 601–604, which provides: "Every national banking association operating foreign branches *shall conduct the accounts of each foreign branch independently of the accounts* of other foreign branches established by it and *of its home office*,[7] and shall at the end of each fiscal period transfer to its general ledger the profit or loss accrued at each branch as a separate item." This provision has been interpreted to mean that a national bank and each of its foreign branches are separate entities, to be treated as if they were unrelated banks with respect to business done between them, and for

---

ment with that decision in United States v. Roth, 2 Cir., 164 F.2d 575, turned entirely on the recent statutory amendments to the Bankruptcy Act which apparently had not been considered by the Third Circuit.

5. See 26 Department of State Bulletin (June 23, 1952) 984–985.

6. Cf. Wallace v. United States, 2 Cir., 142 F.2d 240, 243.

7. Emphasis added.

many other purposes.[8] In Pan-American Bank & Trust Co. v. National City Bank, 2 Cir., 6 F.2d 762, 767, this court, after quoting Section 25, said: "That is, the branch is not a mere 'teller's window'; it is a separate business entity. * * * But the Rio branch, in so becoming a holder of the drafts, and then sending them to New York for collection, assumed the same relation to its home office that any other bank or person that had similarly negotiated the paper would have assumed. In fact, as the evidence shows, the drafts and accompanying documents went from the Rio branch to the New York home office with a demand for credit; i. e., a demand for payment, and payment by the demanded credit was given the branch. This was just what the cited act of Congress in effect requires, and illustrates the rulings that, in respect of the collection of forwarded paper, branches and a parent bank are to be considered as separate entities. * * * Thus the case presents a legal problem identical with the common one resulting from discount by any indifferent dealer in commercial paper of such a draft as Barcellos', and presentation by such dealer of the draft to the drawee for payment." See also In re Harris, D.C.S.D.N.Y., 27 F.Supp. 480; Bluebird Undergarment Corporation v. Gomez, 139 Misc. 742, 249 N.Y.S. 319; cf. Marlboro Trust Co. v. Elliott, 4 Cir., 86 F.2d 315, 316–317.[9] We think this reasoning leads to the conclusion that defendant had no setoff.

Affirmed.

8. See McGrath v. Agency of Chartered Bank of India, D.C., 104 F.Supp. 964, 967–968.

9. Cases as to branch banks not governed by a statute like Section 25 are not pertinent. Such cases are Garnett v. M'Kewan, 8 L.R.Exchequer 10; Prince v. Oriental Bank Corporation, 3 A.C. 325; cf. Rex v. Lovitt [1912] A.C. 212.