**KUERSCHNER & RAUCHWARENFAB-RIK, A.G., Julius Tsuk & Rudolf Tsuk, Plaintiffs,**
v.
**The NEW YORK TRUST COMPANY, Defendant.**

United States District Court,
S. D. New York.
Dec. 13, 1954.

Smith, Sargent, Doman & Grant, New York City, for plaintiffs.

White & Case, New York City, for defendant.

DAWSON, District Judge.

Defendant has moved, pursuant to Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C.A., to dismiss the amended complaint as to the plaintiffs Julius Tsuk and Rudolf Tsuk upon the grounds that (1) it fails to state a claim upon which relief can be granted with respect to Julius Tsuk and Rudolf Tsuk and (2) this Court lacks jurisdiction over the claims asserted by Julius Tsuk and Rudolf Tsuk.

Additionally, defendant seeks security for costs, pursuant to Rule 2 of the Civil Rules of this Court; oral examination of the corporation Kuerschner & Rauchwarenfabrik, A.G. and the individuals Julius Tsuk and Rudolf Tsuk in this District, pursuant to Rule 26 of the Rules of Civil Procedure; and permission to give notice, as provided by Section 51(a) of the New York Civil Practice Act, to Kuerschner & Rauchwarenfabrik, A.G., a Hungarian corporation, Mezo Ferenc, who defendant claims may be the agent of the Hungarian corporation Kuerschner & Rauchwarenfabrik, A.G. for collection of the funds deposited with it, and the Attorney General of the United States of America.

This is an action to recover the sum of $9,895.75 admittedly held by the defendant The New York Trust Company for the account of the plaintiff corporation Kuerschner & Rauchwarenfabrik, A.G., which funds were frozen as of March 13, 1941, pursuant to Executive Order 8389.[1]

In its first complaint and in an amended complaint, plaintiff stated that jurisdiction existed under Section 1332 of Title 28 U.S.C.A. because this was a controversy between parties of diverse citizenship and the amount in controversy exceeded $3,000. Thereafter, without leave of Court, one day before this motion came on to be heard, plaintiff amended its complaint for the second time so as to allege that this was a controversy arising under the laws of the United States, the Trading With The Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., and therefore jurisdiction existed under Section 1331 of Title 28 U.S.C.A. In a memorandum opinion handed down on November 3, 1954, I said that I would treat this motion as being directed to the second amended complaint so as to avoid unnecessary duplication of effort.

The second amended complaint alleges that the individual plaintiffs Julius Tsuk and Rudolf Tsuk were the sole stockholders of the corporate plaintiff Kuerschner & Rauchwarenfabrik, A.G., a Hungarian corporation and have been appointed officers of that corporation; that the plaintiff Julius Tsuk was a citizen and resident of Hungary but now resides in, and is a subject of, Canada; that the plaintiff Rudolf Tsuk was a citizen and resident of Hungary but now resides in, and is a subject of, France; that the President, pursuant to the provisions of the Trading With The Enemy Act and Executive Order No. 8389, as amended, issued thereunder, blocked certain funds in the sum of $9,895.75 which were on deposit with defendant bank "in the name of plaintiff corporation"; that the Department of Justice, pursuant to authority of the Trading With The Enemy Act, while said account was under the jurisdiction of the United States, determined the right of plaintiffs to posses-

1. 5 Fed.Reg. 1400, 12 U.S.C.A. § 95a note.

sion of said funds on deposit in defendant bank and issued a license authorizing defendant bank to pay said funds "to the plaintiffs"; that the plaintiffs have duly demanded said funds and defendant has refused to pay them "to the plaintiffs".

The affidavits and exhibits submitted on behalf of the defendant state that in 1948, Kuerschner & Rauchwarenfabrik, A.G. was nationalized by the Hungarian Government, and in that year it received correspondence from the plaintiff corporation notifying it that one Mezo Ferenc was the only person authorized to sign and receive payment, on behalf of the corporation, of funds held by it in an account of the corporation, and that under no circumstances was the defendant to make payment to either of the individual plaintiffs Rudolf Tsuk or Julius Tsuk, since they were no longer connected with the corporation and had no authorization to make any transfers.

Defendant does not dispute that it has the funds, or that on proper demand and license it should pay them to the corporate depositor. It does dispute the right of the individual plaintiffs to receive funds held for the account of the corporate plaintiff.

The primary issue, therefore, is whether this is a controversy arising under the Trading With The Enemy Act so as to give this Court jurisdiction over the claim of the plaintiffs Julius Tsuk and Rudolf Tsuk under Section 1331 of Title 28 U.S.C.A. Plaintiff contends that this Court has jurisdiction over this action with respect to the plaintiffs Julius Tsuk and Rudolf Tsuk on the ground that they seek to exercise a right arising out of Section 5(b) (1) of the Trading With The Enemy Act, 50 U.S.C.A.Appendix, § 5, which section states in substance:

"During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or othwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise—

"(A) investigate, regulate, or prohibit, any transactions in foreign exchange, transfers of credit or payments between, by, through, or to any banking institution, * * *

\* \* \* \* \* \*

by any person, or with respect to any property, subject to the jurisdiction of the United States * * *."

On April 21, 1942, General Ruling No. 12[2] was issued under Executive Order No. 8389. This Ruling stated, in substance, that after the effective date of the Order, transfer of any property in a blocked account at the time of such transfer was null and void unless licensed or otherwise authorized by the Secretary of the Treasury, and that unless otherwise provided, an appropriate license or other authorization issued by the Secretary of the Treasury before a transfer would validate such transfer or render it enforceable to the extent that it would be valid or enforceable but for the provisions of Sec. 5(b) of the Trading With The Enemy Act, as amended, and the Rulings and Regulations issued thereunder.

■■ The complaint does not allege that the individual plaintiffs deposited any funds in defendant bank. It alleges that the deposit was made by the plaintiff corporation. The complaint does not allege that this deposit was at any time transferred from the plaintiff corporation to the individual plaintiffs or that they have any right or interest therein except as officers and stockholders of plaintiff corporation. It is, of course, obvious that if individual plaintiffs are suing in the right of the corporation, the individuals are neither necessary nor proper parties plaintiff. If the individual plaintiffs claim a right other than that of the plantiff corporation, they have not alleged that there has been a transfer of title to the deposit or other facts which would give them any such right. Under the circumstances, the complaint does not

2. 7 Fed.Reg. 2991, 31 C.F.R. 1943 Cum.Supp. 8849.

state any facts upon which relief can be granted to the individual plaintiffs.

■ The complaint alleges that the Office of Alien Property has "determined the right of plaintiffs to possession of said funds on deposit in defendant bank". If by this the plaintiffs intend to imply that the Office of Alien Property has determined that the individual plaintiffs have some right and title to the deposit, they have misconceived the power of the Office of Alien Property. Under Section 5 of the Trading With The Enemy Act and General Regulation 12 cited above, a license issued by the Office of Alien Property is not a determination of title to property; it is merely a condition precedent to a transfer of property. From the beginning of the "freezing" controls, no attempt has been made to limit the bringing of suits in the Courts of the United States or of any State to determine title to property which has been frozen.[3] However, a license would have to be secured before payment could be made from accounts which had been frozen. The granting of a license is no more than a permission granted by some competent authority exercising control over the assets.[4]

That the issuance of a license by the Office of Alien Property is not a determination of title is borne out by the Regulations and Rulings that set forth the procedure to be followed in connection with an application for the granting of a license for funds in blocked accounts.[5] The procedure is wholly ex parte. Provision for a hearing on the application is made only in the event that the applicant desires to be heard. The primary consideration of the Office of Alien Property is that it be satisfied that the applicants for a license are not nationals of a blocked country. No question of title to the funds or to the account enters into a consideration of the application; in fact, no procedure is provided whereby a controverted issue of title can be determined in the proceedings.

The issuance of a license is not the issuance of an order such as would be enforceable under Sections 9 and 17 of the Trading With The Enemy Act. The license is only the permission of the government to effect the transfer of property held in a blocked account and not an order that the property be transferred.

■ Under the circumstances, the complaint fails to state facts sufficient to constitute a cause of action insofar as the individual plaintiffs Julius Tsuk and Rudolf Tsuk are concerned and the complaint will be dismissed as to them and their names will be stricken from the complaint.

■ The complaint states a proper cause of action on behalf of the corporate plaintiff, and since there is diversity of citizenship, the Court has jurisdiction over this action.

The motion of the defendant to compel the plaintiff to post a bond with the Clerk of this Court in the amount of $250 as security for costs, pursuant to Rule 2 of the Civil Rules of this Court, is granted.

■ There will arise, of course, the question as to whether the individual plaintiffs are the proper persons to cause an action to be instituted in the name of the corporate plaintiff, i. e., are they proper officers and representatives of this corporation? This can be determined by the taking of depositions. Plaintiff has sought an order that the depositions of Julius Tsuk and Rudolf Tsuk be taken in New York. Inasmuch as these individuals allege that they are officers of the plaintiff corporation, the defendant has a right to serve a notice for the taking of their depositions. Defendant,

---

3. See Zittman v. McGrath, 1951, 341 U.S. 446, 454, 455, 458, 71 S.Ct. 832, 95 L.Ed. 1096, quoting the brief of the United States of America as amicus curiae, in Commission for Polish Relief v. Banca Nationala a Rumaniei, 288 N.Y. 332, 43 N. E.2d 345; Berger and Bittker Freezing

Controls: The Effect of an Unlicensed Transaction, 67 Col.L.Rev. 399, 402 (1947).

4. 53 C.J.S., Licenses, § 1, p. 445.

5. 8 C.F.R. Sec. 511.02, Sec. 511.213.

however, has not noticed the taking of plaintiff's deposition under Rule 26 of the Rules of Civil Procedure but has moved directly as it might do under the procedure in the State Court for an order. This is not in accord with proper Federal practice. Defendant must first notice the taking of the deposition of the corporate plaintiff through its officers under Rule 26 before this Court will act. Then if plaintiff seeks a change in the place of the deposition, it may so move under Rule 30(b).[6] So much of the motion as seeks an order for the taking of the deposition of the plaintiff in this District is denied, without prejudice to the defendant to proceed in accordance with the Rules.

A Court must be alert to see that an innocent depositary of funds is not subjected to the possibility of double jeopardy and that no decree will be entered until all persons who have made claim to the funds, or who claim to speak for the corporate plaintiff, have been given an opportunity to appear and protect their rights.

██ In the instant situation, adequate protection against double jeopardy is not afforded to defendant by the Rules of Civil Procedure. Interpleader under Rule 22 is not available because this Court cannot obtain jurisdiction over the Hungarian parties asserting a potentially adverse position;[7] nor is there a res that will support substituted service.[8] Therefore, under Rule 13 of the Civil Rules of this Court, defendant may avail itself of the procedure provided in the Civil Practice Act of the State of New York, and may give notice to the adverse claimant, Mezo Ferenc, pursuant to Sec. 51–a, subd. 4, as amended in 1949, of the New York Civil Practice Act [9] and an order to that effect should be granted.

██ The Court would wish to protect the rights of innocent stockholders affected by confiscatory decrees in foreign countries, inasmuch as our Courts do not recognize those acts when they purport to affect property not within the territorial jurisdiction of the foreign government, unless a national policy of the United States Government requires that such extra-territorial effect should be given, United States v. Pink, 1942, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796.

It might be pointed out, however, that it appears to the Court that the procedure adopted by the plaintiffs in the present case seems destined to lead to unnecessarily expensive and lengthy litigation. The plaintiffs might well consider the fact that a procedure for protecting, preserving, and determining the rights of stockholders of nationalized corporations has been provided by Sec. 977–b of the Civil Practice Act of the State of New York. See Oliner v. American-Oriental Banking Corp., 252 App.Div. 212, 297 N.Y.S. 432, affirmed, 1938, 277 N.Y. 588, 13 N.E.2d 783; United States v. N. Y. Trust Co., D.C.S.D.N.Y.1946, 75 F. Supp. 583, 588. The procedure was adopted so as to enable innocent stockholders, among others, to salvage out of confiscatory decrees promulgated by a foreign state, those corporate assets situated in the State of New York. See Markham v. Taylor, D.C.S.D.N.Y.1947, 70 F.Supp. 202, 204, affirmed sub. nom. Propper v. Clark, 1949, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480, rehearing denied 338 U.S. 841, 70 S.Ct. 33, 94 L.Ed. 514; Oliner v. American-Oriental Banking Corp., supra. While it might be nec-

6. Pierce v. Brovig, D.C., 16 F.R.D. 569.

7. 28 U.S.C.A. § 2361.

8. New York Life Ins. Co. v. Dunlevy, 1916, 241 U.S. 518, 36 S.Ct. 613, 60 L. Ed. 1140; Hanna v. Stedman, 1921, 230 N.Y. 326, 130 N.E. 566.

9. See Zwack v. Kraus Bros. & Co., D.C. S.D.N.Y.1950, 93 F.Supp. 963–966; Republic of China v. National City Bank of New York, 2 Cir., 1951, 194 F.2d 170 (by implication although not considered in final holding: see 2 Cir., 208 F.2d 627, certiorari denied 347 U.S. 951, 74 S.Ct. 676; but cf. Koninklijke v. Lederfabriek "Oisterwijk" N. V. v. Chase Nat. Bank, 1941, 177 Misc. 186, 30 N.Y.S.2d 518, affirmed 263 App.Div. 815, 32 N.Y.S.2d 131, motion for leave to appeal to Court of Appeals denied 263 App.Div. 857, 32 N.Y.S. 2d 784.

essary for a receiver appointed under this provision of the New York statute to receive a license from the Office of Alien Property before assets could be transferred to him, there would be nothing to prevent such a receiver from making an application for such license. See Propper v. Clark, supra, 337 U.S. at pages 482–486, 69 S.Ct. at pages 1339–1341.

Submit order on notice in accordance with the foregoing opinion.