KUERSCHNER & RAUCHWARENFAB-RIK, A.G., Plaintiff,

v.

The NEW YORK TRUST COMPANY, Defendant.

PANNONIA FUR FACTORY (Pannonia Szorme Arguyar), Plaintiff,

v.

The NEW YORK TRUST COMPANY, Defendant.

United States District Court
·S. D. New York.
June 2, 1958.

Doman & Van Heemstra, New York City, for plaintiff Kuerschner & Rauchwarenfabrik.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Pannonia Fur Factory.

White & Case, New York City, A. Hayne de Yampert, New York City, of counsel, for defendant New York Trust Co.

EDELSTEIN, District Judge.

In an action to recover the sum of $9,895.75 admittedly held, at the time of the filing of the complaint and for some time thereafter, by the defendant, The New York Trust Company, for the account of the plaintiff corporation, Kuerschner & Rauchwarenfabrik, A.G., the bank has moved for summary judgment. The plaintiff was a Hungarian corporation that was nationalized. Its funds in the defendant bank were frozen as of March 13, 1941, by executive order under the provisions of the Trading With The Enemy Act, 50 U.S.C.Appendix, § 1 et seq., 50 U.S.C.A.Appendix, § 1 et seq. On December 15, 1953, the two alleged sole surviving pre-nationalization stockholders procured a license from the Office of Alien Property authorizing the defendant to pay to them the amount held by it in the account in the name of the corporate plaintiff. The defendant declined to pay over the balance in the account because of notice of an adverse claim, and plaintiff brought suit. A second action was in fact commenced (after an order of this Court pursuant to § 51-a, subd. 4, New York Civil Practice Act as amended in 1949) by a party claiming to be the plaintiff in the first action under a new name to which it had changed in 1948 "pursuant to the duly enacted laws and decrees of Hungary." After a consolidation of the actions, the second action was discontinued on April 30, 1958. Meanwhile, on February 7, 1957, the balance in the account with the defendant in the name of the plaintiff, for which it sues to recover, was vested by the Attorney General of the United States under authority of Title II of the International Claims Settlement Act of 1949, as amended (69 Stat. 562), 22 U.S.C.A. § 1631 et seq.

■ If the balance in the account of the plaintiff has been vested by the Attorney General, then obviously the plaintiff no longer has a claim against the bank for that balance. But the plaintiff suggests that it is suing for damages for a breach of a contract of deposit, in the amount of the balance, and the complaint claims "damages" in that amount. In order for the amount of the balance in the account to be recoverable as an item of damages, its loss must be an injury that the defendant had reason to foresee as a probable result of its breach of contract when the contract was made. See New York Annotations to the Restatement of the Law of Contracts, § 330. It is inconceivable that the loss here was foreseeable, on a deposit made before 1941, where vesting (and thus the alleged loss) occurred in 1957 as a result of legislation enacted in 1955.

■ The plaintiff is in reality suing to recover on a debt, and since the vesting of the account, the bank is relieved of liability on the debt. This position is reinforced, if it need be reinforced, by plantiff's contention that the funds in its account were not validly vested and that, presumably, the bank has not been relieved of its debt. The argument is that because of the license of December 15,

1953, the funds were unblocked and the International Claims Settlement Act of 1949, as amended, applied only to proper-ty that remained blocked on the effective date of the legislation, August 9, 1955. Even if the vesting order were open to attack here, Judge Dawson has previous-ly ruled (D.C., 126 F.Supp. 684, 688) that the license was not a determination of title but merely a permission for payment to be made from a frozen account, granted by the authority exercising control over the assets.

The motion for summary judgment will be granted.