UNITED STATES of America, Appellee,

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., et al., Appellees,

Banco Central del Paraguay, Appellant.

UNITED STATES of America, Appellee,

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., et al., Appellees,

Abdullah Soydas, As Liquidator of Bank of Credit and Commerce International (Overseas) Ltd., Istanbul, Izmir and Mersin, Turkey, Appellant.

UNITED STATES of America, Appellee,

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., et al., Appellees,

The Liquidation Commission for BCCI (Overseas) Ltd., Macua Branch, Appellant.

Nos. 93–5297, 93–5298 and 93–5347.

United States Court of Appeals, District, of Columbia Circuit.

Argued Nov. 23, 1994.

Decided March 3, 1995.

Larry E. Klayman, argued the cause, for the appellants. On brief was Allen Lescht. Wayne S. Bishop entered an appearance for the appellants.

Lloyd H. Randolph, Atty., Dept. of Justice, argued the cause, for appellee U.S. of America. On brief were Eric H. Holder, Jr., U.S. Atty., and Robert D. Sharp, Stefan D. Cassella and James C. Kohn, Attys., Dept. of Justice.

Eric L. Lewis and Michael Nussbaum were on brief, for appellees BCCI Holdings, et al.

Before: SILBERMAN, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants are liquidators for the Paraguayan, Turkish and Macanese branches of the Bank of Credit and Commerce International (Overseas) Limited (BCCI Overseas). Each liquidator appeals the district court's dismissal of its petition under 18 U.S.C. § 1963($l$)(2) for adjudication of its interests in financial accounts located in this country and ordered forfeited pursuant to 18 U.S.C. § 1963 and to its parent bank's plea agreement. The district court held that the branches lacked statutory standing to file the petitions because they are not parties "other than" defendant BCCI Overseas, as required under section 1963($l$)(2). We affirm that dismissal.[1]

On January 24, 1992 the district court accepted pleas of guilty on behalf of BCCI Overseas and three related banking entities[2] on charges of violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (RICO). The same day the court entered an order under 18 U.S.C. § 1963, pursuant to a plea agreement, requiring that the same four entities forfeit to the United States their interests in any property located in this country except for assets transferred here by court-appointed liquidators in the course of liquidation.[3] The Government then published notice of the for-

---

1. Because the appellants lack standing to file a section 1963($l$)(2) petition, we do not address their contentions that they are entitled to a hearing on their petitions and that certain assets are not subject to forfeiture under section 1963.

2. They are BCCI Holdings (Luxembourg), S.A.; Bank of Credit and Commerce International,

S.A.; and International Credit and Investment Company (Overseas) Limited.

3. For a more detailed account of the events leading up to the forfeiture order, see *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185 (D.C.Cir.1995).

feiture order in eleven major American newspapers and sent individual notices to over 340 entities, in compliance with 18 U.S.C. § 1963(*l*)(1).[4] In response, various parties representing bank branches and depositors, including the appellant liquidators, filed petitions to establish their interests in forfeited assets pursuant to 18 U.S.C. § 1963(*l*)(2). By order filed August 19, 1993 the district court dismissed the petitions on the ground that the branches of BCCI Overseas failed to satisfy section 1963(*l*)(2)'s threshold standing requirement that a petitioner be a party "other than the defendant."[5] We agree with that disposition.

 Our courts have long recognized that, while individual bank branches may be treated as independent of one another, each branch, unless separately incorporated, must be viewed as a part of the parent bank rather than as an independent entity. In 1927, the New York Supreme Court wrote of bank branches:

> [W]hen considered with relation to the parent bank, they are not independent agencies; they are, what their name imports, merely branches, and are subject to the supervision and control of the parent bank, and are instrumentalities whereby the par-

ent bank carries on its business, and are established for its own particular purposes, and their business conduct and policies are controlled by the parent bank, and their property and assets belong to the parent bank, although nominally held in the names of the particular branches.

*Sokoloff v. National City Bank of N.Y.*, 130 Misc. 66, 224 N.Y.S. 102, 114 (Sup.Ct.1927), *aff'd without opinion*, 223 A.D. 754, 227 N.Y.S. 907 (1928), *aff'd*, 250 N.Y. 69, 164 N.E. 745 (1928). Relying on the *Sokoloff* rule that a branch is a mere component of its parent, federal courts have repeatedly held parent banks accountable for the debts of their branches. *See; e.g., Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291, 1303–04 (1st Cir.1988); *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 863 (2d Cir.1981), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *First Nat'l Bank of Boston (Int'l) v. Banco Nacional de Cuba*, 658 F.2d 895, 900 (2d Cir.1981), *cert. denied*, 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982); *Trinh v. Citibank, N.A.*, 850 F.2d 1164, 1168 (6th Cir.1988), *cert. denied*, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990).[6] We find that rule,

---

**4.** The subsection provides:

Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

18 U.S.C. § 1963(*l*)(1).

**5.** The subsection provides in full:

Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

18 U.S.C. § 1963(*l*)(2). Subsection (*l*)(6) provides that if the court determines after the hearing that a petitioner had at the time of the illegal activity an interest in forfeited property superior to the defendant's or subsequently acquired

property as a bona fide purchaser, it is to amend the forfeiture order accordingly.

**6.** Authority cited by the appellants to support the independent status of branch banks is inapposite here. The cited cases merely *treat* branches *like* independent banks in discrete, narrow contexts unrelated to the branches' juridical status and often involving transactions between the bank and its branch. *See Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53–54 (2d Cir.1965) (foreign branch separate from parent for determining jurisdiction to attach its assets); *Republic of China v. National City Bank of N.Y.*, 208 F.2d 627 (2d Cir.1953) (sovereign nation's debt to foreign branch of domestic parent bank is "separate" from domestic transaction with parent so that suit by foreign sovereign to recover on the latter does not waive its sovereign immunity from suit based on the former); *Marlboro Trust Co. v. Elliott*, 86 F.2d 315, 316–17 (4th Cir.1936) (check drawn on distant branch accorded same preferential status under South Carolina codification of Uniform Collection Code as one drawn upon another bank); *Pan–American Bank & Trust Co. v. National City Bank of N.Y.*, 6 F.2d 762, 767 (2d Cir.) (branch treated same as independent bank when presenting paper to parent bank), *cert. denied*, 269 U.S. 554, 46 S.Ct. 18, 70 L.Ed. 408 (1925); *Banco Nacional de Cuba v.*

**554**

which has become a part of our federal common law, to be controlling here. Accordingly, we conclude that the branches represented by the appellants have no separate legal identity apart from their parent, defendant BCCI Overseas, and therefore are not parties "other than the defendant" authorized to file petitions under section 1963(*l*)(2). Nevertheless, the appellants argue we should ignore the *Sokoloff* rule for two reasons. We find neither persuasive.

■ First, the appellants assert that, as legally authorized liquidators, they have interests separate from the institutions they represent and therefore from the four BCCI defendants as well. A bank liquidator, however, stands in the shoes of the bank it represents and enjoys precisely the same rights and interests. *Trigo v. FDIC,* 847 F.2d 1499, 1501 (11th Cir.1988); *FDIC v. Glickman,* 450 F.2d 416, 418 (9th Cir.1971); *Commonwealth ex rel. Sheppard v. Central Penn Nat'l Bank,* 31 Pa.Cmwlth. 190, 375 A.2d 874, 877 (1977) (citing *Commonwealth ex rel. Kelly v. Commonwealth Mutual Ins. Co.,* 450 Pa. 177, 299 A.2d 604, 606 (1973)); *In re International Milling Co.,* 259 N.Y. 77, 181 N.E. 54, 56 (1932); *Hammons v. Grant,* 26 Ariz. 344, 225 P. 485, 486–87 (1924). Thus, in their capacities as branch liquidators the appellants have no more standing to file the petitions than do the branches they represent.

Second, the appellants contend we should apply the law of each branch's domicile rather than the federal common-law rule derived from *Sokoloff* to determine whether that branch operates independently from its parent bank. In so urging, the appellants rely on the principle that a federal court should apply the law of the jurisdiction with the "greatest interest" in the litigation and its outcome, which in this case, they maintain, is the domicile of the depositors who will suffer financial loss as a result of the forfeiture. This argument ignores the obvious: the depositors stand to lose no more if the assets are forfeited than the United States will lose if they are not. In any event, we believe precedent dictates that United States federal

common law govern the forfeiture of assets located within its borders and acquired or maintained in the course of racketeering activities that violate its statutes.

■ The Supreme Court has repeatedly held that federal penal statutes should be uniformly enforced, without regard to the vagaries of state law, unless Congress has revealed a clear intent to the contrary. *See, e.g., Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (refusing to adopt state definitions of "burglary" in applying federal sentencing enhancement statute); *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 118–21, 103 S.Ct. 986, 994–96, 74 L.Ed.2d 845 (1983) (subjecting individual to federal statute's firearms disability despite state law "expunction" of his felony guilty plea); *United States v. Turley,* 352 U.S. 407, 410–11, 77 S.Ct. 397, 398–99, 1 L.Ed.2d 430 (1957) (rejecting state law definitions of "stolen" in construing the National Motor Vehicle Theft Act). The reason for this policy is clear: identically situated parties should not arbitrarily receive different treatment under the same federal statutory scheme. *See Taylor,* 495 U.S. at 591, 110 S.Ct. at 2154 (noting that if individual state definitions of burglary were accepted "a person imprudent enough to shoplift or steal from an automobile in California would be found ... to have committed a burglary constituting a 'violent felony' for enhancement purposes—yet a person who did so in Michigan might not" and declining to "interpret Congress' omission of a definition of 'burglary' in a way that leads to odd results of this kind.") (citing *Dickerson,* 460 U.S. at 119–20, 103 S.Ct. at 995; *Turley,* 352 U.S. at 411, 77 S.Ct. at 399). The same reasoning governs here. The language of RICO itself shows Congress intended consistent and uniform enforcement of the forfeiture provisions, without regard to local law. *See* 18 U.S.C. § 1963(a) (requiring forfeiture of eligible assets "irrespective of any provision of State law"). To construe section 1963(*l*)(2) in light of the divergent laws of foreign nations would frustrate that intent and we decline to do so. Accordingly, we apply the federal

---

*Chase Manhattan Bank,* 505 F.Supp. 412, 444 (S.D.N.Y.1980) (branch separate from parent for

"value-related purposes"), *modified in other respects,* 658 F.2d 875 (2d Cir.1981).

common-law rule and treat the bank branches as components of their parent defendant bank.

For the preceding reasons, we conclude that the appellants lack standing to file petitions under 18 U.S.C. § 1963($l$)(2). To the extent that the forfeitures may work a hardship on the bank branches or their depositors, the "'appropriate ex[cl]usive remedy'" is to seek equitable relief from the Attorney General under 18 U.S.C. § 1963(g)(1).[7] *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185 (D.C.Cir.1995) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 208). Accordingly, the decision of the district court dismissing the petitions is

*Affirmed.*

---

**7.** That section authorizes the Attorney General to "grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this chapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of [RICO]."