**R. B. BOONE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7228.**

United States Court of Appeals
Fourth Circuit.

Argued June 14, 1956.

Decided July 17, 1956.

William J. Waggoner and Louis A. Bledsoe, Jr., Charlotte, N. C. (Weinstein and Muilenburg, Charlotte, N. C., on the brief), for appellant.

William I. Ward, Jr., Asst. U. S. Atty., Statesville, N. C. (J. M. Baley, Jr., U. S. Atty., Marshall, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

BRYAN, District Judge.

With the District Judge we hold that in the intendment of section 2312, title 18, United States Code—outlawing the interstate transportation of stolen motor vehicles and aircraft—an automobile is "stolen" if it was obtained by false pretenses, notwithstanding that the circumstances of the procurement would not constitute larceny at common law. In our opinion the statute is not circumscribed by the requisites of larceny.

The point arises from the conviction of the appellant under this statute on proof that he had transported an automobile across State lines after purchasing it with a check he represented as good but knew to be worthless. Admitting the transportation, he contends that, although obtained through false pretenses, the ownership of the car with the incident right of possession passed to him before he removed it from the owner's possession and, therefore, the car in his hands was never "stolen"— that a "stolen" car is one taken through larceny only, but that getting title by false pretenses is not larceny. His of-

fense is but a State crime, he adds. Two instances of such conduct are pleaded in the indictment. We need not recount the evidence because, in our opinion, the appellant violated the statute even if title to the car became his before he drove it from the State.

This is the statute:

"§ 2312. Transportation of stolen vehicles. Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

■ The Circuits have divided in their construction of "stolen" in this section. The Fifth, Eighth and Tenth have synonymized the word with larceny. Murphy v. U. S., 5 Cir., 1953, 206 F.2d 571; Ackerson v. U. S., 8 Cir., 1950, 185 F.2d 485; Hite v. U. S., 10 Cir., 1948, 168 F.2d 973. The same conclusion was reached in this Circuit by a District Court in South Carolina and in Maryland. Ex parte Atkinson, D.C.E.D.S.C. 1949, 84 F.Supp. 300; United States v. Turley, D.C.M.D.1956, 141 F.Supp. 527. Contra, the Second, Sixth and Ninth Circuits have refused to find "stolen" to be conterminous with larceny. United States v. Sicurella, 2 Cir., 1951, 187 F.2d 533, 534; Collier v. U. S., 6 Cir., 1951, 190 F.2d 473, 477; Smith v. U. S., 9 Cir., 1956, 233 F.2d 744. As did the Court of Appeals for the Sixth, we adopt the definition given by Judge Miller in United States v. Adcock, D.C.W.D.Ky., 1943, 49 F.Supp. 351, 353 "that the word 'stolen' is used in the statute not in the technical sense of what constitutes larceny, but in its well known and accepted meaning of taking the personal property of another for one's own use without right or law * * *", contemplating, of course, an intent to deprive the owner of it permanently. It includes what Blackstone phrases as the "cozening of another by artful means".

■ Of course, a contrary intent not appearing, a Federal criminal statute using a word known to the common law borrows the common law sense of the term. Hite v. U. S., 10 Cir., 1948, 168 F.2d 973. But while "stolen" is constantly identified with larceny, the term was never at common law equated or exclusively dedicated to larceny. "Steal" (originally "stale") at first denoted in general usage a taking through secrecy, as implied in "stealth", or through stratagem, according to the Oxford English Dictionary. Expanded through the years, it became the generic designation for dishonest acquisition, but it never lost its initial connotation. Nor in law is "steal" or "stolen" a word of art. Blackstone does not mention "steal" in defining larceny—"the felonious taking and carrying away of the personal goods of another"—or in expounding its several elements. IV Commentaries 229 et seq.

Judge Hammond in United States v. Stone, C.C.W.D.Tenn.1881, 8 F. 232, 247, concluded, "I do not find the word 'steal' used in defining larceny in any of the common-law authorities cited by Mr. Bishop, or elsewhere, from Lord Coke down", and again, " * * * it is not a technical word, in the strict sense of that term, but a common word applied to almost any unlawful taking, without regard to exactness of use or accurate technical terminology." See, too, United States v. Jolly, D.C.W.D.Tenn.1888, 37 F. 108, 111. The Fifth Circuit, though taking a view opposed to ours on the point now on appeal, has said in another connection, "Stealing, having no common law definition to restrict its meaning as an offense, is commonly used to denote any dishonest transaction whereby one person obtains that which rightfully belongs to another * * *." Judge Holmes in Crabb v. Zerbst, 5 Cir., 1938, 99 F.2d 562, 563, 565. Black's Law Dictionary, 3d ed., gives "steal" as denotive of a taking by false pretenses or by embezzlement or by larceny.

■ But, regardless of what significance the common law, the courts, or the lexicologists have ascribed to "stolen", decisive here is the meaning that the

Congress attributed to it. The Congressional intent is disclosed by the contemporaneous use of the same expression in a related statute. A near parallel is section 659 of title 18, penalizing the misappropriation of goods, baggage, or money comprising an interstate shipment. As well as stealing, embezzlement, asportation and concealment, the section brands as a crime the obtainment of goods, baggage, or money "by fraud or deception." Together all these acts are thereafter seemingly comprehended in the statute, in two instances, as "embezzled or stolen", when it defines the crime of receiving such goods and property. Thus the Congress expected "stolen" to embody "fraud or deception".

It is interesting that in 1949 section 659 was amended in certain minor respects for uniformity; but no more words were thought needed to make clear that the crime of receiving included a receipt of property founded on an antecedent capture of it through fraud and deception. From 1913 until 1948 section 659, then 18 U.S.C.A. §§ 409, 410, 411, in proscribing receiving and possessing, had described the contraband property simply as "stolen". Moreover, both in the old act and in the new, there is an added crime of "carrying or transporting" of goods, baggage or money "knowing the same to have been stolen"; as there is no enumeration of the unlawful precedent acts of seizure, the fair presumption is that "stolen" characterized and encompassed all of the positive criminal acts previously named in the section.

Of section 659—the goods, baggage and money section—the Second Circuit has repeatedly declared, " * * * the prohibitions of the statute should not be restricted to technical common law larceny." United States v. O'Connell, 2 Cir., 1948, 165 F.2d 697, 699, certiorari denied 333 U.S. 864, 68 S.Ct. 744, 92 L.Ed. 1143; United States v. DeNormand, 2 Cir., 1945, 149 F.2d 622, 624, certiorari denied 326 U.S. 756, 808, 811, 66 S.Ct. 89, 90 L.Ed. 454. These authorities are of telling pertinency in the present controversy because of the similarity of the terms of section 659 both to the words of section 2312, on which the indictment is predicated, and to the language of section 2313, the complement of 2312 and denouncing the receiving of a motor vehicle known to be "stolen". Sections 2312 and 2313 both came from the National Motor Vehicle Theft Act, October 29, 1919, 41 Stat. 324.

■ But terminology aside, the object of the statute in dispute, section 2312, plainly manifests that the Congress did not contemplate that the force of the act would be limited to a single type of criminal conduct. Certainly this salutary punishment of the interstate movement of dishonestly acquired vehicles will be seriously weakened if the felon must be acquitted although he admits he defrauded the owner of his car or truck and drove it out of the State.

Furthermore, to follow the common law conceptions here, instead of the generally accepted meaning of the statute's words, would inject unintended refinements into the act. There is no such vagueness about "steal" or "stolen" as could give rise to the least doubt of the nature of the charge. To make the definition referable to the common law is to abandon a considered and simple standard for a measure fraught with legal nuances and without foundation in logic. "The distinctions of the common law as to theft are not those of a broad theory of legislation; they are highly technical, and very largely dependent upon history for explanation." Holmes, The Common Law, p. 73.

Affirmed.