# UNITED STATES *v.* TURLEY.

No. 289.   Argued January 24, 1957.—Decided
February 25, 1957.

*Roger D. Fisher* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Olney* and *Beatrice Rosenberg.*

*Fenton L. Martin* argued the cause and filed a brief for appellee.

MR. JUSTICE BURTON delivered the opinion of the Court.

This case concerns the meaning of the word "stolen" in the following provision of the National Motor Vehicle Theft Act, commonly known as the Dyer Act:

> "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both." [1]

The issue before us is whether the meaning of the word "stolen," as used in this provision, is limited to a taking which amounts to common-law larceny, or whether it includes an embezzlement or other felonious taking with intent to deprive the owner of the rights and benefits of ownership. For the reasons hereafter stated, we accept the broader interpretation.

In 1956, an information based on this section was filed against James Vernon Turley in the United States District Court for the District of Maryland. It charged that Turley, in South Carolina, lawfully obtained possession of an automobile from its owner for the purpose of driving certain of their friends to the homes of the latter in South Carolina, but that, without permission of the owner and with intent to steal the automobile, Turley

---

[1] 18 U. S. C. § 2312. The original Act, sponsored by Representative L. C. Dyer of Missouri, became law in 1919. 41 Stat. 324. It was amended, in 1945, to include aircraft, 59 Stat. 536, and was re-enacted, in 1948, as part of the Criminal Code, 62 Stat. 806.

converted it to his own use and unlawfully transported it in interstate commerce to Baltimore, Maryland, where he sold it without permission of the owner.[2]   The information thus charged Turley with transporting the automobile in interstate commerce knowing it to have been obtained by embezzlement rather than by common-law larceny.

Counsel appointed for Turley moved to dismiss the information on the ground that it did not state facts sufficient to constitute an offense against the United States. He contended that the word "stolen" as used in the Act referred only to takings which constitute common-law larceny and that the acts charged did not.   The District Court agreed and dismissed the information.   141 F. Supp. 527.   The United States concedes that the facts alleged in the information do not constitute common-law larceny, but disputes the holding that a motor vehicle obtained by embezzlement is not "stolen" within the meaning of the Act.   The Government appealed directly

---

[2] As amended, the information charged that—

"On or about January 20, 1956, at Columbia, South Carolina,

JAMES VERNON TURLEY

did lawfully obtain a certain 1955 Ford automobile from its owner, Charles T. Shaver, with permission of said owner to use the automobile briefly on that day to transport certain of their friends to the homes of the latter in Columbia, South Carolina, and to return with them, but after so obtaining the automobile and transporting said persons to their homes, and before returning with them or delivering back the automobile to its owner, James Vernon Turley, without permission of the owner, and with intent in South Carolina to steal the 1955 Ford automobile, did convert the same to his own use and did unlawfully transport it in interstate commerce from Columbia, South Carolina, to Baltimore in the State and District of Maryland, knowing it to have been stolen, where he did on January 21, 1956, sell said 1955 Ford automobile without permission of the owner."

to this Court under 18 U. S. C. § 3731 because the dismissal was based upon a construction of the statute upon which the information was founded. We noted probable jurisdiction. 352 U. S. 816.

Decisions involving the meaning of "stolen" as used in the National Motor Vehicle Theft Act did not arise frequently until comparatively recently. Two of the earlier cases interpreted "stolen" as meaning statutory larceny as defined by the State in which the taking occurred.[3] The later decisions rejected that interpretation but divided on whether to give "stolen" a uniformly narrow meaning restricted to common-law larceny, or a uniformly broader meaning inclusive of embezzlement and other felonious takings with intent to deprive the owner of the rights and benefits of ownership.[4] The Fifth, Eighth and Tenth Circuits favored the narrow definition,[5] while the Fourth, Sixth and Ninth Circuits favored

---

[3] *Carpenter* v. *United States*, 113 F. 2d 692 (C. A. 8th Cir. 1940); *Abraham* v. *United States*, 15 F. 2d 911 (C. A. 8th Cir. 1926). The *Abraham* case arose in Oklahoma, where larceny was defined by statute in the narrow common-law sense, and the conviction was reversed because the taking did not meet that test. The *Carpenter* case arose in Minnesota, where the statutory definition of larceny included embezzlement and other types of fraudulent taking, and the conviction was affirmed.

[4] In this opinion felonious is used in the sense of having criminal intent rather than with reference to any distinction between felonies and misdemeanors.

[5] *Murphy* v. *United States*, 206 F. 2d 571 (C. A. 5th Cir. 1953) (false pretenses); *Ackerson* v. *United States*, 185 F. 2d 485 (C. A. 8th Cir. 1950) (false pretenses); *Hite* v. *United States*, 168 F. 2d 973 (C. A. 10th Cir. 1948) (false pretenses). Cf. *Hand* v. *United States*, 227 F. 2d 794 (C. A. 10th Cir. 1955) (larceny by bailee); and *Stewart* v. *United States*, 151 F. 2d 386 (C. A. 8th Cir. 1945) (larceny by bailee). See also, *United States* v. *Kratz*, 97 F. Supp. 999 (D. C. Neb. 1951) (embezzlement); *United States* v. *O'Carter*, 91 F. Supp. 544 (D. C. S. D. Iowa 1949) (false pretenses); *Ex parte Atkinson*, 84 F. Supp. 300 (D. C. E. D. S. C. 1949) (false pretenses).

the broader one.[6]   We agree that in the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law.   See *Jerome* v. *United States,* 318 U. S. 101, 104 (1943); *United States* v. *Handler,* 142 F. 2d 351, 354 (C. A. 2d Cir. 1944).

We recognize that where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning.[7]   But "stolen" (or "stealing") has no accepted common-law meaning.   On this point the Court of Appeals for the Fourth Circuit recently said:

"But while 'stolen' is constantly identified with larceny, the term was never at common law equated or

---

[6] *Boone* v. *United States,* 235 F. 2d 939 (C. A. 4th Cir. 1956) (false pretenses); *Smith* v. *United States,* 233 F. 2d 744 (C. A. 9th Cir. 1956) (embezzlement); *Breece* v. *United States,* 218 F. 2d 819 (C. A. 6th Cir. 1954) (embezzlement); *Wilson* v. *United States,* 214 F. 2d 313 (C. A. 6th Cir. 1954) (embezzlement); *Collier* v. *United States,* 190 F. 2d 473 (C. A. 6th Cir. 1951) (embezzlement); *Davilman* v. *United States,* 180 F. 2d 284 (C. A. 6th Cir. 1950) (embezzlement). And see *United States* v. *Sicurella,* 187 F. 2d 533, 534 (C. A. 2d Cir. 1951) where the court said that "a narrow common law definition [of "stolen"] is not required under the Dyer Act."

Most of these cases adopted the definition of "stolen" given by Judge Shackelford Miller, Jr., in *United States* v. *Adcock,* 49 F. Supp. 351, 353 (D. C. W. D. Ky. 1943) (embezzlement):

". . . the word 'stolen' is used in the statute not in the technical sense of what constitutes larceny, but in its well known and accepted meaning of taking the personal property of another for one's own use without right or law, and that such a taking can exist whenever the intent to do so comes into existence and is deliberately carried out regardless of how the party so taking the car may have originally come into possession of it."

[7] *United States* v. *Carll,* 105 U. S. 611 (1882); *United States* v. *Smith,* 5 Wheat. 153 (1820); *United States* v. *Brandenburg,* 144 F. 2d 656 (C. A. 3d Cir. 1944).

exclusively dedicated to larceny. 'Steal' (originally 'stale') at first denoted in general usage a taking through secrecy, as implied in 'stealth,' or through stratagem, according to the Oxford English Dictionary. Expanded through the years, it became the generic designation for dishonest acquisition, but it never lost its initial connotation. Nor in law is 'steal' or 'stolen' a word of art. Blackstone does not mention 'steal' in defining larceny—'the felonious taking and carrying away of the personal goods of another'—or in expounding its several elements. IV Commentaries 229 et seq." *Boone* v. *United States,* 235 F. 2d 939, 940 (C. A. 4th Cir. 1956).

Webster's New International Dictionary (2d ed., 1953) likewise defines "stolen" as "Obtained or accomplished by theft, stealth, or craft . . . ." Black's Law Dictionary (4th ed., 1951) states that "steal" "may denote the criminal taking of personal property either by larceny, embezzlement, or false pretenses." [8] Furthermore, "stolen" and "steal" have been used in federal criminal statutes, and the courts interpreting those words have declared that they do not have a necessary common-law meaning coterminous with larceny and exclusive of other theft crimes.[9] Freed from a common-law meaning, we should

---

[8] In defining "theft" Webster's New International Dictionary (2d ed. 1953) says: *"Stealing* and *theft,* esp. in popular use, are broader terms than *larceny,* and may include *swindling* as well as *embezzlement."*

"The term 'theft,' sometimes used as a synonym of larceny, is in reality a broader term, applying to all cases of depriving another of his property whether by removing or withholding it, and includes larceny, robbery, cheating, embezzlement, breach of trust, etc." 13 Encyclopaedia Britannica, Larceny (1953), 720. And see 2 Bouvier's Law Dictionary (3d rev. ed. 1914) 3267.

[9] See, *e. g., United States* v. *O'Connell,* 165 F. 2d 697, 698 (C. A. 2d Cir. 1948) ("steal" or "unlawfully take by any fraudulent device, scheme, or game" from dining car moving in interstate commerce);

give "stolen" the meaning consistent with the context in which it appears.

> "That criminal statutes are to be construed strictly is a proposition which calls for the citation of no authority. But this does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." *United States* v. *Bramblett,* 348 U. S. 503, 509–510 (1955); see also, *United States* v. *Sullivan,* 332 U. S. 689, 693–694 (1948).

It is, therefore, appropriate to consider the purpose of the Act and to gain what light we can from its legislative history.

By 1919, the law of most States against local theft had developed so as to include not only common-law larceny but embezzlement, false pretenses, larceny by trick, and other types of wrongful taking. The advent of the automobile, however, created a new problem with which the States found it difficult to deal. The automobile was uniquely suited to felonious taking whether by larceny, embezzlement or false pretenses. It was a valuable, salable article which itself supplied the means for speedy escape. "The automobile [became] the perfect chattel for modern large-scale theft." [10] This challenge could be best

---

*United States* v. *De Normand,* 149 F. 2d 622, 624 (C. A. 2d Cir. 1945) (interstate transportation of goods "stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin"); *United States* v. *Handler,* 142 F. 2d 351, 353 (C. A. 2d Cir. 1944) (same); *Crabb* v. *Zerbst,* 99 F. 2d 562, 565 (C. A. 5th Cir. 1938) ("embezzle, steal, or purloin" property of the United States); *United States* v. *Trosper,* 127 F. 476, 477 (D. C. S. D. Cal. 1904) ("steal" from the mails); *United States* v. *Jolly,* 37 F. 108 (D. C. W. D. Tenn. 1888) ("steal" from the mails); *United States* v. *Stone,* 8 F. 232 (C. C. W. D. Tenn. 1881) ("plunders, steals, or destroys" goods belonging to a vessel in distress).

[10] Hall, Theft, Law and Society (2d ed. 1952), 235, and see 233–240; 58 Cong. Rec. 5470–5478.

met through use of the Federal Government's jurisdiction over interstate commerce. The need for federal action increased with the number, distribution and speed of the motor vehicles until, by 1919, it became a necessity.[11] The result was the National Motor Vehicle Theft Act.

This background was reflected in the Committee Report on the bill presented by its author and sponsor, Representative Dyer. H. R. Rep. No. 312, 66th Cong., 1st Sess. This report, entitled "Theft of Automobiles," pointed to the increasing number of automobile thefts, the resulting financial losses, and the increasing cost of automobile theft insurance. It asserted that state laws were inadequate to cope with the problem because the offenders evaded state officers by transporting the automobiles across state lines where associates received and sold them. Throughout the legislative history Congress used the word "stolen" as synonymous with "theft," a term generally considered to be broader than "common-law larceny." [12] To be sure, the discussion referred to "larceny" but nothing was said about excluding other forms of "theft." The report stated the object of the Act in broad terms, primarily emphasizing the need for the exercise of federal powers.[13] No mention is made of a purpose to

---

[11] In 1895, there were four automobiles in the United States and, in 1910, about 500,000. Hall, *op. cit.* 234 *et seq.* In 1919, there were nearly 6,500,000. H. R. Rep. No. 312, 66th Cong., 1st Sess. 2–3. Today, there are over 65,000,000 motor vehicle registrations. World Almanac (1957) 699.

[12] See n. 8, *supra.*

[13] The report began and ended as follows:

"The Congress of the United States can scarcely enact any law at this session that is more needed than the bill herein recommended, and that has for its purpose the providing of severe punishment of those guilty of the stealing of automobiles in interstate or foreign commerce. . . . State laws upon the subject have been inadequate to meet the evil. Thieves steal automobiles and take them from

distinguish between different forms of theft, as would be expected if the distinction had been intended.[14]

"Larceny" is also mentioned in *Brooks* v. *United States,* 267 U. S. 432 (1925).[15] This reference, however, carries

one State to another and ofttimes have associates in this crime who receive and sell the stolen machines. . . .

. . . . .

"The purpose of the proposed law is to suppress crime in interstate commerce. Automobiles admittedly are tangible property, capable of being transmitted in interstate commerce. The larceny of automobiles is made a crime under the laws of all the States in the Union. No good reason exists why Congress, invested with the power to regulate commerce among the several States, should not provide that such commerce should not be polluted by the carrying of stolen property from one State to another. Congress is the only power competent to legislate upon this evil, and the purpose of this bill is to crush it, with the penalties attached." *Id.,* at 1, 4. See also, 58 Cong. Rec. 5470–5478, 6433–6435.

[14] In 1948, following the decision in *Hite* v. *United States,* 168 F. 2d 973 (C. A. 10th Cir.), holding that the word "stolen" was restricted to common-law larceny, the Department of Justice proposed various clarifying amendments to 18 U. S. C. § 2312. These amendments sought to clarify the application of the Act by adding the words "embezzled, feloniously converted, or taken feloniously by fraud," or similar language. Such an amendment was adopted by one House of Congress in each of the 81st, 83d and 84th Congresses, but in each case it failed to come to a vote in the other House. Appellee seeks support for his interpretation of "stolen" in the failure of Congress to enact these proposals, but we think this failure is entitled to no significance. The proposed amendments are shown by their respective Committee Reports to be clarifying amendments. They included other proposed changes and were never voted down. See S. 1483, 81st Cong., 1st Sess. (S. Rep. No. 358); S. 675, 83d Cong., 2d Sess. (S. Rep. No. 2364); and H. R. 3702, 84th Cong., 1st Sess. (H. R. Rep. No. 919).

[15] In that case Chief Justice Taft, after referring to the purpose of Congress in passing the Act "to devise some method for defeating the success of these widely spread schemes of larceny," did not further discuss larceny but said:

"The quick passage of the machines into another State helps to conceal the trail of the thieves, gets the stolen property into another

no necessary implication excluding the taking of automobiles by embezzlement or false pretenses. Public and private rights are violated to a comparable degree whatever label is attached to the felonious taking. A typical example of common-law larceny is the taking of an unattended automobile. But an automobile is no less "stolen" because it is rented, transported interstate, and sold without the permission of the owner (embezzlement).[16] The same is true where an automobile is purchased with a worthless check, transported interstate, and sold (false pretenses).[17] Professional thieves resort to innumerable forms of theft and Congress presumably

---

police jurisdiction and facilitates the finding of a safer place in which to dispose of the booty at a good price. This is a gross misuse of interstate commerce. Congress may properly punish such interstate transportation by any one with knowledge of the theft, because of its harmful result and its defeat of the property rights of those whose machines against their will are taken into other jurisdictions." *Id.*, at 438–439.

[16] See *Smith* v. *United States*, 233 F. 2d 744 (C. A. 9th Cir. 1956); *Hand* v. *United States*, 227 F. 2d 794 (C. A. 10th Cir. 1955); *Stewart* v. *United States*, 151 F. 2d 386 (C. A. 8th Cir. 1945); Clark and Marshall, Crimes (5th ed. 1952), 428–451, 482–503; Annotation, Distinction between larceny and embezzlement, 146 A. L. R. 532.

A car rental situation was involved in *Davilman* v. *United States*, 180 F. 2d 284 (C. A. 6th Cir. 1950). Kindred situations were involved in *Breece* v. *United States*, 218 F. 2d 819 (C. A. 6th Cir. 1954); *Wilson* v. *United States*, 214 F. 2d 313 (C. A. 6th Cir. 1954); and *Collier* v. *United States*, 190 F. 2d 473 (C. A. 6th Cir. 1951). Another embezzlement situation, the use of an employee to obtain automobiles feloniously, was involved in *United States* v. *Bucur*, 194 F. 2d 297 (C. A. 7th Cir. 1952).

[17] See *Boone* v. *United States*, 235 F. 2d 939 (C. A. 4th Cir. 1956); *Murphy* v. *United States*, 206 F. 2d 571 (C. A. 5th Cir. 1953); *Ackerson* v. *United States*, 185 F. 2d 485 (C. A. 8th Cir. 1950); *Hite* v. *United States*, 168 F. 2d 973 (C. A. 10th Cir. 1948). In each of these cases the defendant obtained possession of a car by passing a bad check, falsely representing that it would be paid.

sought to meet the need for federal action effectively rather than to leave loopholes for wholesale evasion.[18]

We conclude that the Act requires an interpretation of "stolen" which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles. The Government's interpretation is neither unclear nor vague. "Stolen" as used in 18 U. S. C. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, dissenting.

If Congress desires to make cheating, in all its myriad varieties, a federal offense when employed to obtain an automobile that is then taken across a state line, it should express itself with less ambiguity than by language that leads three Courts of Appeals to decide that it has not said so and three that it has. If "stealing" (describing a thing as "stolen") be not a term of art, it must be deemed a colloquial, everyday term. As such, it would hardly be used, even loosely, by the man in the street to cover "cheating." Legislative drafting is dependent on treacherous words to convey, as often as not, complicated ideas, and courts should not be pedantically exacting in con-

---

[18] For examples of other automobile theft devices, see Hall, Theft, Law and Society (2d ed. 1952), 252–253. For a history of common-law larceny and the development of other theft crimes, see *id.*, at 1–109, and Hall and Glueck, Criminal Law and Enforcement (1951), 165–171.

struing legislation. But to sweep into the jurisdiction of the federal courts the transportation of cars obtained not only by theft but also by trickery does not present a problem so complicated that the Court should search for hints to find a command. When Congress has wanted to deal with many different ways of despoiling another of his property and not merely with larceny, it has found it easy enough to do so, as a number of federal enactments attest. See, *e. g.*, 18 U. S. C. §§ 641, 655, 659, 1707. No doubt, penal legislation should not be artificially restricted so as to allow escape for those for whom it was with fair intendment designed. But the principle of lenity which should guide construction of criminal statutes, *Bell* v. *United States*, 349 U. S. 81, 83–84, precludes extending the term "stolen" to include every form of dishonest acquisition. This conclusion is encouraged not only by the general consideration governing the construction of penal laws; it also has regard for not bringing to the federal courts a mass of minor offenses that are local in origin until Congress expresses, if not an explicit, at least an unequivocal, desire to do so.

I would affirm the judgment.