**UNITED STATES of America**

v.

**Willie Roy SHEFFIELD.**

**Cr. A. No. 24381.**

United States District Court
D. Maryland.

April 10, 1958.

Leon H. A. Pierson, U. S. Atty., John C. Gianakos, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Robert R. Bair, Venable, Baetjer & Howard, Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the criminal information was filed against the defendant for the interstate transportation of a known stolen described automobile under 18 U.S. C. § 2312, indictment having been waived. After appointment by the court of counsel for the defendant, a plea of not guilty was entered. A court trial without a jury was requested.

After hearing the evidence in the case and arguments of counsel, I rendered a verdict of guilty and gave an oral opinion from the Bench reviewing the facts in the case and stating the basis for the legal conclusion. At that time counsel for the parties did not submit any requested instructions on the law nor did counsel for the defendant then submit requested findings of fact. After the oral opinion was rendered counsel for the defendant moved for a new trial and has filed a memorandum brief and a long list of requested findings of fact.

Although the oral opinion from the Bench, which can be transcribed by the court reporter if desired, contained findings, I can make them more succinctly.

1. The vehicle described in the information, a 1954 Chrysler Windsor deLuxe sedan, bearing New Jersey license ER 58–25, was owned by Cinithia Evans, 135 Elizabeth Avenue, Newark, N. J. It was parked on a street in Newark. The defendant, 28 years of age and a worker in an upholstery factory in Newark, was not known to the owner and was not given permission by her to operate the motor car for any purpose at any time.

During the night of March 7–8, 1958, the defendant, having been recently paid a week's wages of about $50, and having been drinking, saw the automobile so parked and thereupon without any authority from the owner either express or implied or colorable, stole the car by stealth and drove it from Newark, N. J., into Delaware and then into Maryland, down the Eastern Shore into Virginia to the end of the Del-Mar-Va Peninsula, where he took a ferry to Norfolk, Virginia, for the purpose, he said, of visiting a woman whom he knew. Not finding her in Norfolk he returned by ferry to where he had left the automobile and then drove it north into Maryland.

3. At a point between Princess Anne and Salisbury in Maryland, a Maryland State Trooper noticed the car being driven at an excessive rate of speed and after catching up with it required the defendant, who was the driver, to stop. On being asked for the production of his registration card and driver's license the defendant told the Trooper that he had left them at home. This not satisfying the Officer the defendant then said that he had borrowed the car from his brother. Still not satisfied, the Trooper ordered the defendant to get into the police car and then the defendant voluntarily said that he had stolen the car in Newark, N. J. This was about 4 A.M. on Sunday, March 9th. The automobile was stored at Salisbury, Maryland, by the Trooper and on inquiry through the police at Newark, the information was received that the car had been stolen. The State Police notified an agent of the Federal Bureau of Investigation who interviewed the defendant at Salisbury, who again admitted that he had stolen the car or taken it without authority, and when arrested he said he intended to take the car back to Newark. A few days thereafter the automobile was delivered to the owner or her representative at Salisbury, Maryland. It was apparently not damaged except for the natural wear and tear in driving the automobile several hundred miles.

4. At the trial the defendant, as a witness for himself, testified he was motivated in taking the car to use it to go to see a woman friend in Norfolk, Virginia. Not finding her there he returned to the car and was driving it northward when arrested. He said in substance that when arrested his intention was to take the car back to Newark and abandon it at some place about six blocks distant from where he had taken it; and that he did not intend to leave it just where he had found it for fear of apprehension.

On these facts counsel for the defendant has submitted a motion for acquittal on the ground that the Government had not proven beyond a reasonable doubt that the intention of the defendant in taking the car at Newark was to *permanently* deprive the owner of her property and therefore the car was not stolen within the meaning of 18 U.S.C. § 2312. I overrule this motion for the following reasons.

The two essential facts to be proven by the Government in a case of this kind are (1) that the defendant transported the car in interstate commerce and (2) that at the time of so doing he knew it to be stolen. The interstate transportation is not denied and the evidence clearly shows that the defendant knew he had stolen the car.

The contention of the defendant is based on a phrase in the opinion of Judge Bryan of the Court of Appeals for the Fourth Circuit in the case of Boone v. United States, 235 F.2d 939, decided July 17, 1956. In that case the question before the court was whether the automobile had been stolen before the interstate transportation when the possession of the car had been obtained by false pretenses rather than by outright larceny. After a review of the recent appellate decisions it was held that the word "stolen" as contained in section 2312 was not to be construed as necessarily including all the technical requirements of the common law of larceny or theft, and therefore the word "stolen" was gratified by an unlawful taking, whether possession was obtained by false pretenses or embezzlement. In this connection where the precise point before the court as to the original taking not amounting to common law larceny but secured through false pretenses, it was appropriate to add the expression (at page 940) "contemplating, of course, an intent to deprive the owner of it permanently". It will be noted that the phrase relied upon is added after the quotation from the definition of "stolen" given by Judge Miller in United States v. Adcock, D.C.W.D.Ky., 49 F.Supp. 351, 353—

"* * * that the word 'stolen' is used in the statute not in the technical sense of what constitutes larceny, but in its well known and accepted meaning of taking the personal property of another for one's own use without right or law, * * *".

I do not think the phrase "contemplating, of course, an intent to deprive the owner of it permanently" was intended to apply to such a case as we have here, that is where there is no dispute that the original taking by the defendant was a taking by trespass and by stealth. The taking in this case was stealing in the ordinary acceptation of the term and was evidently so understood by the defendant himself at the time of his arrest.

But if I am mistaken in my understanding of Judge Bryan's well expressed opinion in the case, I must necessarily follow what is the broader application of the word "stolen" in the statute expressed in the opinion of Mr. Justice Burton in the later case of United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 398, 1 L.Ed.2d 430, February 25, 1957. In that case the question before the Supreme Court (on direct appeal from an order of this court) was stated to be—

"The issue before us is whether the meaning of the word 'stolen,' as used in this provision, is limited to a taking which amounts to common-law larceny, or whether it includes an embezzlement or other felonious taking with intent to deprive the owner of the rights and benefits of ownership. For the reasons hereafter stated, we accept the broader interpretation."

And after a full discussion the opinion on page 417 of 352 U.S., on page 402 of 77 S.Ct. concludes:

"We conclude that the Act requires an interpretation of 'stolen' which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in un-

lawfully obtained motor vehicles. The government's intepretation is neither unclear, nor vague. 'Stolen' as used in 18 U.S.C. § 2312, 18 U.S.C.A. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny."

There can be no doubt that the original taking by the defendant in this case deprived the owner of important property rights and benefits. The right to the possession and use of property, especially an automobile, is a very important property right. In this case on the facts when the defendant took the property he clearly intended to drive it through three States for several hundred miles and necessarily thereby deprived the owner for several days of the use and possession of her own property. Not only was the original taking within the ordinary acceptation of theft but the continued use of it by the defendant deprived the owner for several days of her rights and benefits of ownership.

■ Counsel for the defendant asks me to make as a finding of fact that in the original taking it was the defendant's intention to return the property to Newark. For this we have only the statement of his mental intention. In view of the circumstances I am not disposed to accept this without question on the ground of credibility, although the Government had no evidence to the contrary as it naturally would not have in a case where the requested finding is based only on the statement of the defendant's mental intention. The original taking having clearly been unlawful and by trespass, we are not dealing with a case where the original taking was not by trespass but obtained by false pretenses or embezzlement. In the latter case the technical requirement of the common-law larceny would not be gratified although such a taking was later made a statutory offense both in England and in many of the States of the United States. And now it has clearly been decided by the Supreme

Court that the word "stolen" as used in the statute would apply to any kind of felonious taking which constitutes a deprivation of the rights and benefits of ownership. And, of course, as is so clearly pointed out in Mr. Justice Burton's opinion, the concern of Congress in passing the statute was to forbid the interstate transportation of motor cars taken by a defendant feloniously and against the rights and benefits of ownership.

There are two facts in the evidence which may be thought to give some colorable support for the defendant's statement that he intended to return the car to Newark. One is that when arrested he was on his way northward in the general direction of Newark, N. J., and he had a job there which he said he intended to resume the following Monday morning. But it will be noted that the defendant's own statement was that he did not intend to return the car to the place from which he had stolen it because he feared possible apprehension in so doing. That is to say, he said he proposed to leave the car some six blocks away from where he had taken it. True, if he had done so it may thereafter with some further delay have been found by the owner; but I cannot accept the defendant's statement of his mental intention under such circumstances as equivalent to a full intention on his part to restore the automobile to the owner. In the instant case it is also to be noted that when the defendant was stopped on the highway by the Maryland State Trooper and asked for a registration certificate for the car he at first stated that he had left it at home. This was in effect an assertion by him of the ownership of the car which was consistent with the fact that he had taken it for total deprivation of the owner's rights.

But even if the defendant's statement as a witness as to his ultimate intention with regard to the car were to be accepted and made a finding of fact, I still think that the automobile was stolen within the meaning of the word in the statute as determined by the recent Supreme Court case of United States v. Turley, supra.

When an automobile is taken without right of colorable authority and by stealth and to be used by the taker for his own use and benefit for an indefinite period of time, I think there is properly a presumption, or at least sufficient evidence, for an inference of fact that it is being taken to deprive the owner of the rights and benefits of his property; and the mere statement of a defendant who has so feloniously taken a motor car that he intended to abandon it somewhere in the same city (one of several thousand inhabitants) is not sufficient to destroy the inference unless well supported by collateral facts.

My conclusion of law, therefore, is that the automobile in question was stolen within the meaning of the statute. The motion for a new trial is, therefore, *denied*. The Marshal should promptly present the defendant for sentence with notice to counsel.