v.

**William P. ROGERS et al., Defendants.**

**Civ. No. 1402–58.**

United States District Court
District of Columbia.

Nov. 25, 1958.

**UNITED STATES, of America, Plaintiff,**

v.

**Charles David BRICKLES and Harry Lee Simenson, Defendants.**

**Cr. No. 100.**

United States District Court
D. Montana,
Billings Division.

Oct. 28, 1959.

Krest Cyr, U. S. Atty., Butte, Mont., Waldo N. Spangelo and John F. Blackwood, Asst. U. S. Attys., Billings, Mont., for plaintiff.

Richmond F. Allan, Billings, Mont., for defendants.

JAMESON, District Judge.

This is a proceeding under 18 U.S.C., Chapter 403, commonly known as the Juvenile Delinquency Act. The defendants, Charles David Brickles and Harry Lee Simenson, are 16 years of age. The basis of the offense of juvenile delinquency is the alleged transportation of a motor vehicle in interstate commerce knowing the same to have been stolen.[1] The case was tried on an agreed statement of objective facts and testimony of the defendants as to their intent.

On July 1, 1959, the defendants were incarcerated at the Montana State Industrial School for Boys at Miles City, Montana. On that date they escaped from the school by taking a state-owned truck, which they drove off the premises to a place some five miles away where it became stuck in the mud. They abandoned this truck and walked in a southerly direction toward Wyoming. At approximately midnight they entered a farm yard and without the permission of any one took a truck parked there with the ignition keys in it. They drove southward to Birney, Montana, where they stopped briefly and burglarized a grocery store, obtaining some $21 or $22 in cash. They continued their journey southward, crossing the Montana-Wyoming border, to a point about three miles north of Sheridan, Wyoming, where the truck ran out of gas. Defendants abandoned the truck and hitch-hiked into Sheridan, arriving there at approximately 8:00 a. m. on July 2. They obtained a room and slept during the day. About 9:30 p. m. of July 2, they took a 1950 Chevrolet car from the streets of Sheridan and drove it south to Casper, Wyoming, where they were arrested in possession of the Chevrolet car.

The defendants admit the burglary of the store in Birney, Montana and the taking of the Chevrolet car from the streets of Sheridan, Wyoming, but object to the admission of these facts on the ground of competency. The court admitted these facts solely for their bearing on the question of the defendants' intent.

The defendants contend that for a motor vehicle to have been "stolen" within the meaning of Section 2312, there must be an intent to permanently deprive the owner of his property; that the facts here do not establish such an intent; and that lacking the required intent, the defendants may not be found guilty of the specific crime originally charged and consequently cannot be found guilty of juvenile delinquency.

The defendants testified that they at no time intended to permanently deprive the owner of his vehicle; that their original plan was to abandon the truck at the state line and hitch-hike their way south; that they were not aware of crossing the state line and upon becoming aware that they had done so upon their approach to Sheridan, they planned to drive the truck back to the Montana-Wyoming border and abandon it; that they abandoned this plan after the truck ran out of gas because they feared that because of the delay they would be caught if they obtained more gas and drove the truck back to the border. Both defendants testified that they never had any plan or intention of taking the truck

1. 18 U.S.C. § 2312, which reads: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

any farther than they actually took it. On cross-examination they testified that when they left the State Industrial School they planned to go to Texas to look for work, and that they planned to hitch-hike and ride freight trains for transportation.

The Government, as is quite common in such cases, was unable to offer any direct proof of the defendants' intent. Accepting, for the moment, the defendants' testimony as to their intent as true, was the motor vehicle "stolen" within the meaning of Section 2312?

■ Courts of appeal of the United States divided on the question of whether the word "stolen" as used in Section 2312 was equated with common law larceny. The United States Supreme Court resolved the question by determining that the term "stolen" was not limited to common law larceny, but extended to other theft crimes as well. United States v. Turley, 1957, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430. After an extended discussion of the meaning of the word "stolen" as used in Section 2312 and other federal criminal statutes, the Court concluded:

"We conclude that the Act requires an interpretation of 'stolen' which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles. The Government's interpretation is neither unclear nor vague. 'Stolen' as used in 18 U.S.C. § 2312 [18 U.S. C.A. § 2312] includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the

theft constitutes common-law larceny." 352 U.S. 417, 77 S.Ct. 402.

Even prior to United States v. Turley, the Ninth Circuit in Smith v. United States, 1956, 233 F.2d 744, held that the word "stolen" in its "more general usage includes larceny, larceny by trick, fraudulent pretenses and embezzlement since it means:

" 'taking the personal property of another for one's own use without right or law, and * * * such a taking can exist whenever the intent to do so comes into existence and is deliberately carried out regardless of how the parties so taking the car may have originally come into possession of it.' "[2] 233 F.2d at page 747.

Counsel for defendants recognizes the rule set forth in United States v. Turley and Smith v. United States, supra, but argues, in a very able brief, that while the word "stolen" is not limited to larceny and includes other theft crimes as well, the holding in United States v. Turley does not change the elements or requirements of the crimes it sweeps into the orbit of the term "stolen" and that it is still necessary to show an intent to deprive the owner of his property permanently. Counsel relies in particular upon language in an opinion of the Fourth Circuit in Boone v. United States, 1956, 235 F.2d 939, 940. In that case the defendant, charged with interstate transportation of a stolen motor vehicle, had obtained possession of the car by passing a worthless check. He contended that "stolen" as used in the statute was synonymous with "larceny" and thus the car was not "stolen" within the meaning of Section 2312. In holding that the term "stolen" encompassed obtaining property by false pretenses, the court adopted and quoted with approval Judge Miller's definition in United States v.

2. This is quoted from a definition of the word "stolen" in an opinion by Judge Shackelford Miller in United States v. Adcock, D.C.W.D.Ky.1943, 49 F.Supp. 351, 353. As noted in Smith v. United States, this broader definition of the word "stolen" has been adopted in many cases. The note states further that, "Black's Law Dictionary also takes the view that 'to steal' encompasses all theft crimes."

Adcock, supra, and then added the clause, "contemplating, of course, an intention to deprive the owner of it permanently." The addition of this language in Boone v. United States is the basis of defendants' contention that the Government must prove an intent to deprive the owner of his property permanently to establish a violation of 18 U.S.C. § 2312.

The same contention was made in United States v. Sheffield, D.C.Md.1958, 161 F.Supp. 387,[3] the only case directly in point as far as disclosed by the research of the court and counsel. In rejecting the defendant's contention in that case, the court said: "I do not think the phrase 'contemplating, of course, an intent to deprive the owner of it permanently' was intended to apply to such a case as we have here, that is where there is no dispute that the original taking by the defendant was a taking by trespass and by stealth. The taking in this case was stealing in the ordinary acceptation of the term and was evidently so understood by the defendant himself at the time of his arrest." 161 F.Supp. at page 389. It was the court's conclusion also that in any event the United States Supreme Court had adopted a broader application of the word "stolen" in United States v. Turley, supra.

I concur in the reasoning of Judge Chesnut in United States v. Sheffield. In the Boone case, the intent of the defendant was not an issue and the language relating to intent is in the nature of dictum. It is significant that in none of the other cases which have adopted the broader definition of the term "stolen" has the court indicated that an intent to permanently deprive the owner of his property is an essential element of the crime. In United States v. Turley, supra, Justice Burton in a footnote quoted the definition of Judge Miller in United States v. Adcock and also cited Boone v. United States; but there was no reference to the qualifying language in the Boone case. It is true of course that in Turley v. United States, as in most of the other cases, the defendant's acts precluded such a defense and the specific question here presented was not raised. I agree with Judge Chesnut, however, that under the broad language of Turley v. United States,[4] an intent to deprive the owner permanently of his property need

---

3. In United States v. Sheffield, the defendant took a car off the streets of Newark, New Jersey on the night of March 7–8, without the owner's consent. He drove it through several neighboring states for a total of several hundred miles on personal business, and was arrested in possession of the car at 4:00 a. m. on March 9, in the State of Maryland. At the time of his arrest he was driving in the general direction of Newark. After his successive claims of ownership of the car and borrowing the car from his brother were proven false, the defendant admitted to state officers and an F.B.I. agent "that he had stolen the car or taken it without authority, and when arrested he said he intended to take the car back to Newark." 161 F.Supp. at page 388. At the trial defendant testified that when arrested his intention was to take the car back to Newark and abandon it at some place about six blocks from where he had taken it.

The only significant distinction between the instant case and the Sheffield case is the fact that in the Sheffield case the defendant, when arrested, claimed ownership of the car, while in the instant case,

the defendants said or did nothing inconsistent with the owner's property rights other than the unlawful taking and using the truck for their own purposes for a period of approximately eight hours. I do not deem this distinction important.

4. In particular, I am impressed by the Court's conclusion that " 'stolen' as used in 18 U.S.C. § 2312, 18 U.S.C.A. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." [352 U.S. 407, 77 S.Ct. 402]

There are many "thefts" which do not include the requirement of an intent to deprive the owner permanently of his property. Many states, for example, have enacted statutes making it a felony or misdemeanor to take or use a motor vehicle without the owner's consent. These statutes do not specify an intent to permanently deprive the owner of his property as an element of the crime. The Montana statute, R.C.M.1947, section 94–3305 is typical. "Any * * * person

948

not be established where, as here, the initial taking by the defendant was a taking by trespass and stealth, whatever the rule might be when possession is originally obtained with the consent of the owner.

Moreover, I am unable to accept the testimony of the defendants regarding their intent at its face value on the ground of credibility. I reject their testimony that they intended to leave the truck at the state line as incredible. I am convinced that while the defendants may not have formed a specific intent to permanently deprive the owner of his property, they did intend to deprive him of his property for so long as it suited their purposes.

The defendants accordingly are found guilty of juvenile delinquency.

This opinion will supplement judgment heretofore entered.

who, without the consent of the owner, shall take, use, operate, or remove, or cause to be taken, used, operated, or removed, * * * any * * * motor vehicle, and operate or drive, or cause the same to be operated or driven, for his own profit, use or purpose, or for the profit, use or purpose of another, shall be punished * * *."