UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BEATRIX McKINNEY,

      Defendant - Appellant.

No. 00-3175

---

ORDER
Filed July 23, 2001

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **JONES**, Senior Circuit Judge.[*]

---

In order to correct a clerical error we recall our mandate issued on July 12, 2001. The order and judgment filed on June 20, 2001 is amended to include Judge Nathaniel R. Jones's dissent . The amended order and judgment shall be filed as of the date of this order.

Entered for the Court
PATRICK FISHER, Clerk of Court

By:
Keith Nelson
Deputy Clerk

---

[*] The Honorable Nathaniel R. Jones, Senior Circuit Judge, U.S. Court of Appeals, Sixth Circuit, sitting by designation.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 23 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BEATRIX McKINNEY,

      Defendant - Appellant.

No. 00-3175
(00-CR-40009-SAC)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**JONES**, Senior Circuit Judge.[**]

---

Beatrix McKinney was charged in a one count information filed in the

United States District Court for the District of Kansas with assaulting Joyce

Straight within a federal military installation at Fort Riley, Kansas, in violation of

18 U.S.C. §113(a)(5). She pled not guilty to the charge and was tried by a

United States Magistrate Judge ("magistrate") who found her guilty of the charge

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Nathaniel R. Jones, Senior Circuit Judge, U.S. Court of Appeals, Sixth Circuit, sitting by designation.

and sentenced her to one year probation with a special condition that she attend and complete a mental health program specifically directed toward anger management. McKinney appealed to the district court, which affirmed the magistrate's judgment. 18 U.S.C. § 3402. She now appeals her conviction and sentence to this court. We affirm.

This case arose out of an altercation occurring at the horse stables located on the Fort Riley Military Installation at Fort Riley, Kansas. Both McKinney and Straight board horses there. The two argued over numerous matters, in the course of which McKinney called Straight a liar, and culminated when, according to Straight, McKinney told Straight "I'll kill you, you f*** bitch." Thereafter, according to Straight, McKinney returned to the vehicle she was driving and Straight returned to her automobile. McKinney drove off and Straight reported the incident, first to 911, and then to the base MPs.

Straight testified, in effect, that she feared that McKinney, after returning to her vehicle, might "ram" her or her vehicle by driving into the Straight vehicle. Straight based her fear of such, in part, on a prior altercation she had with McKinney. Straight testified that on the prior occasion, after an argument between the two, McKinney drove her vehicle directly at a vehicle in which she and her husband were seated in an "aggressive manner" at an accelerating speed and skidded to a stop about 3 feet away from the Straight vehicle. Specifically,

in this connection, Straight testified as follows:

> TC[1]: Had you had an opportunity to see the defendant drive before?
>
> W1: Yes. One occasion my husband and I were sitting in our truck and she was upset about something, and I can't recall what it was, but she had a truck, a friend's truck at that time, and she drove at us very aggressively, very threateningly. I wasn't even sure she was going to stop before she plowed into our vehicle. And, yes, I had, I had concern that she might ram me with her vehicle.
>
> TC: Okay. Did your fear continue after that immediate... at that moment?
>
> W1: I'm sorry?
>
> TC: Did your fear continue past that?
>
> W1: Yeah. I was shake – I was still shaking when the MPs arrived on the scene. I was, yes.
>
> TC: Okay. What–what did you do after that?
>
> W1: I–I had called 911 and they told me I'd reached Junction City, so they told me I had to call the MPs and the MPs advised me to wait there. My truck was locked and I had the phone in my hand, and so I waited for the MPs. I was in no shape to drive anyway.
>
> TC: Okay. Did your fear continue after that day?
>
> W1: It still continues. I–I would not want to meet her alone anywhere.

At the hearing before the magistrate the only witnesses were Straight and McKinney, the latter denying that she made any threat to kill Straight or that on a prior occasion she had attempted to "ram" a vehicle in which Straight and her husband were seated. The magistrate chose to give credence to Straight's version of events, which he, as the trier of fact, had the right to do. In finding McKinney guilty of simple assault, the magistrate spoke as follows:

---

[1] "TC" is trial counsel for the government and "W1" is Straight .

-3-

I have considered the evidence and the arguments and statements, Counsel, and I am prepared to rule. And from the evidence presented, Court finds the testimony of Joyce Straight to be credible. First, the Court finds that the defendant made a verbal threat to injure or kill Mrs. Straight. Next, the Government must show that the threat was coupled with the apparent ability to do so. Given that the defendant was in the area and approached her vehicle after making the threat, and given Ms. Straight's testimony that the defendant had once drove at her aggressively once before, causing apprehension that the defendant would strike her, the defendant [sic] had reason to believe that the defendant had the present ability to injure her by coming after her in her vehicle, as she had done previously. Ms. Straight had reasonable belief to fear, or expect immediate bodily injury given defendant's verbal threat and defendant's prior threatening behavior while driving. The credibility of Ms. Straight is strengthened by the fact that her fear was such, that she hired an attorney and obtained a restraining order to keep the defendant away from her. The Court, therefore finds, beyond a reasonable doubt, that the defendant is guilty of simple assault as charged in the information.

In affirming the judgment of the magistrate, the district court spoke, *inter alia*, as follows:

McKinney threatened to kill Straight and began walking towards her car. That fact, and the fact that Straight had seen McKinney drive threateningly at her in the past, gave Straight reasonable apprehension of immediate bodily harm. Straight's apprehension of harm was further demonstrated when she called 911.

In this court, McKinney raises two questions (1) whether simple assault under 18 U.S.C. § 113(a)(5) requires some objective behavior by the accused, in addition to a threat to kill, to support a finding of reasonable apprehension of immediate bodily harm and (2) whether the evidence is sufficient to support a conviction of simple assault as defined by 18 U.S.C. § 113(a)(5) and common

-4-

law.  The answer to both questions is "yes."

18 U.S.C. §113(a)(5) reads as follows:

**Assaults within maritime and territorial jurisdiction**

 **(a)** Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

. . . .

    **(5)** Simple assault, by fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 1 year, or both.

18 U.S.C. §113(a)(5) does not itself define the term "simple assault."  We addressed that problem in *United States v. Calderon*, 655 F.2d 1037, 1038 (10th Cir. 1981) when, in connection with a charge of assault filed pursuant to 18 U.S.C. 351(e), we spoke as follows:

    Section 351(e) does not define the term "assault."  Faced with a similar lack of definition for "assault" in 18 U.S.C. §113(a), the court in *United States v. Bell,* 505 F.2d 539 (7th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1357, 43 L.Ed.2d 442 (1975), recognized that "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430 (1957).  The court in *Bell* found that "there are two concepts of assault in criminal law, the first being an attempt to commit a battery [the exclusive concept urged by defendant here] and the second an act putting another in reasonable apprehension of bodily harm . . . .  Most jurisdictions recognize both concepts of criminal assault." 505 F.2d at 540. *See United States v. Dupree*, 544 F.2d 1050, 1051-52 (9th Cir. 1976); R. Perkins, *Criminal Law* 114-22 (2d ed. 1969).

The trial court instructed the jury that

> [a]ny willful attempt to [sic] threat to inflict injury upon the person of another, when coupled with an apparent present ability to do so, or any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm, constitutes an assault.

Record, vol. 4, at 258. This instruction adequately informed the jury of the two concepts of criminal assault. Substantial evidence supports defendant's conviction under either concept.

In line with *Calderon*, in *United States v. Gauvin*, 173 F.3d 798, 802 (10th Cir. 1999), we spoke as follows:

> Neither 18 U.S.C. § 111 nor 18 U.S.C. § 113 define assault. However, "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." *United States v. Turley*, 352 U.S. 401, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). Assault is traditionally defined as "an attempted battery" or as "placing another in reasonable apprehension of a battery." *See* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law,* §7.16 (1986). This circuit adopted this definition when interpreting another federal assault statute. *See U.S. v. Calderon*, 655 F.2d 1037, 103 (10th Cir. 1981).

So, under *Calderon* and *Gauvin*, the charge against McKinney of so-called "simple assault" embraced "two concepts": (1) an attempted battery or (2) an act by McKinney that put Straight "in reasonable apprehension of bodily harm." The parties to this appeal agree that ours is not a case of "attempted battery" and that we are only concerned with the second "concept" i.e. an "act" by McKinney that put Straight in "reasonable apprehension of bodily harm."

-6-

Although McKinney denied threatening to kill Straight, the magistrate chose to believe Straight's testimony that McKinney did, in fact, threaten to kill her. Both parties agree that the "threat to kill" is not in itself sufficient to support a conviction under the second "concept" of "assault," and that the facts and circumstances must be such as to show that Straight's subjective apprehension of bodily harm was "reasonable. We hold that the record supports the determination of the magistrate, affirmed by the district court, that Straight's apprehension of bodily harm was "reasonable."[2] The fact, as found by both the magistrate and the district court, that on a prior occasion arising out of a dispute between the two McKinney had driven her car in the direction of a vehicle being occupied by Straight and her husband in an "aggressive manner" at an accelerating speed and skidded to a stop about 3 feet away from the Straight vehicle, supports a finding that Straight had a reasonable apprehension that, in returning to her vehicle after threatening to kill Straight, McKinney would do the same thing she did on the prior occasion, namely drive her vehicle at the Straight vehicle in an aggressive manner at an accelerating speed and that this time she might not stop 3 feet short of ramming her vehicle.

---

[2]In *Lillie v. United States*, 40 F.3d 1105, 1109 (10th Cir. 1994) we held that a magistrate's findings were "plausible" and therefore not clearly erroneous and that where "there are two permissible views of the evidence the fact finder's choice between them cannot be clearly erroneous."

Judgment affirmed.

Entered for the Court


Robert H. McWilliams
Senior Circuit Judge

**No. 00-3175, United States v. McKinney**

**Nathaniel R. Jones**, Circuit Judge, dissenting.

I agree with the majority's holding that the government must prove that the accused engaged in some objective behavior that placed the victim in reasonable apprehension of immediate bodily harm in order to support a conviction for simple assault. However, I do not agree with its conclusion that the government has met this burden in the instant case.

At trial, the government introduced evidence that Beatrix McKinney ("Mrs. McKinney" or "McKinney") and Joyce Straight ("Mrs. Straight" or "Straight") engaged in a lengthy argument at the Ft. Riley Stables on June 11, 1999. At the conclusion of the argument, Mrs. McKinney went to put grain in her horse's bin, and Mrs. Straight walked toward her car. While McKinney was attending to her horse, she said "Nothing better happen to my horse" and Straight said "Same with mine." As Straight got into her car, McKinney started toward her own car. On her way there, she allegedly threatened Straight saying, "I'll kill you, you fucking bitch." Record, vol. 1, at 12.[1] Mrs. McKinney did not make any threatening gestures or give any other indication that she intended to physically harm Mrs. Straight. She simply walked to her car, got in, and drove away in the opposite

_____

[1] At that point, she was approximately 50 feet from Mrs. Straight. On cross examination, Mrs. Straight was asked where Mrs. McKinney was when she threatened her. She replied that the distance was approximately the same as the distance from where she was sitting to the opposite wall of the courtroom. Record, vol. 1, at 22. This distance was estimated at 50 feet. *Id* at 26.

direction.

Despite these facts, Mrs. Straight testified that she feared that Mrs. McKinney would ram her with her car because Mrs. McKinney had come close to hitting her car on a previous occasion. As proof of Mrs. Straight's fear, the government introduced evidence that Straight called 911 and refused to get out of her car until the police arrived. In addition, Straight subsequently hired an attorney and obtained a restraining order to keep the defendant away from her.

While this evidence clearly supports a finding that Mrs. Straight was scared of Mrs. McKinney, a showing of fear is not sufficient to support a conviction for simple assault. As the majority opinion correctly notes, the government must show that Mrs. McKinney engaged in objective behavior which placed Mrs. Straight in "reasonable apprehension of *immediate* bodily harm." Maj. Op. at 4-6 (citing *United States v. Calderon*, 655 F.2d 1037, 1038 (10th Cir. 1981) (emphasis added)). In this case, the government has not met that burden. It is undisputed that when Mrs. McKinney allegedly uttered her threat she was walking toward her car and that Mrs. Straight was already in her car. Given these circumstances it is clear that Mrs. McKinney did not pose a threat of *immediate* harm to Mrs. Straight. If Mrs. Straight believed that Mrs. McKinney was walking toward her car with the intent of ramming her, she could have easily evaded this threat by driving away.

-2-

Although the majority notes that a defendant cannot be convicted solely for threatening to kill someone, it appears that is exactly what has happened. After allegedly threatening Mrs. Straight, Mrs. McKinney walked to her car and drove away. This was an act of withdrawal, and not a menacing move. However, while it is clear that McKinney's exit was intended to put an end to an unpleasant episode, her retreat has been manipulated to support a conviction for simple assault.[2] I cannot support this result. Accordingly, I respectfully dissent.

---

[2] One way to avoid this baffling result in the future would be to heed the commentators' admonition that the crime of criminal assault includes "an actual intention to cause apprehension." *See* W. LaFave & A Scott, Criminal Law § 7.16, at 316 (1986)(One cannot "commit a criminal assault by negligently or even recklessly or illegally acting in such a way (as with a gun or a car) as to cause another person to become apprehensive of being struck. There must be an actual intention to cause apprehension . . . .")(citing Model Penal Code § 211.1, cmt. at 177-78 (1980)(defining simple assault as "an *intentional* subjection of another to reasonable apprehension of receiving a battery")(emphasis added).

-3-